[No. 14419. Department One. April 3, 1918.]

CARLO GIANINI, *Respondent*, v. PETER V. CERINI *et al.*, *Appellants.*[1]

MASTER AND SERVANT — DEFECTIVE APPLIANCE — NEGLIGENCE—EVIDENCE—SUFFICIENCY. Recovery for injuries when an auto truck went over a bank, injuring the driver, are sustained, where there was evidence that the accident was due to defective brakes which did not hold, that the employer had notice of the defect and failed to give notice thereof to the servant, who had driven the truck only once before the accident.

TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE. Upon an issue as to defendant's admissions as to knowledge of defects causing a personal injury, it is proper to refuse cautionary instructions relating to the effect of casual statements in random conversations, especially where the conversation was not a casual or random one; such cautionary instructions being liable to trench upon the constitutional inhibition against comments on the evidence.

SAME—MISCONDUCT OF COUNSEL—FACT OF INDEMNITY INSURANCE. An action for personal injuries is not to be dismissed because the plaintiff, on redirect examination, testified that an attorney stated he was not defendant's lawyer, but the "insurance" lawyer, where it was not sufficient to inform the jury, and was not a wanton intrusion, of the fact that the defendant carried liability insurance, and related and was incidental to a matter brought out by defendant's cross-examination.

[1]Reported in 171 Pac. 1007.

Appeal from a judgment of the superior court for King county, Bell, J., entered April 28, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee while driving an auto truck. Affirmed.

*James B. Murphy* and *Robert C. Saunders,* for appellants.

*Vince H. Faben,* for respondent.

WEBSTER, J.—In an action to recover damages for personal injuries, the plaintiff obtained a verdict and judgment, from which defendants appeal, assigning as error the insufficiency of the evidence to sustain the verdict, the refusal of the court to give certain requested instructions, and misconduct of the plaintiff in injecting into the case the fact that the defendant was protected by liability insurance. We shall discuss these assignments in the order stated.

On August 8, 1916, the plaintiff, an employee of the defendant, while backing an automobile truck in an effort to turn it around, was precipitated over a steep bluff, resulting in the injuries complained of. The defective condition of the brakes on the truck was the only ground of negligence submitted to the jury. The plaintiff's version of the accident, in his own language, is:

"I went to back up the truck, the front around, and when I see I am far enough I take my foot off from the gas and put it on the brake, and the brake don't hold and the truck went overboard. Q. Why? A. Why? Because the brake don't hold me; even when I put in the emergency brake, down he went."

He further testified that the defendant Peter V. Cerini visited him at the hospital a day or two after the accident and said that he was sorry he had never

said anything about the brakes; that the brake was loose from the drum and had been "all along."

This evidence was sufficient to warrant the jury in finding that the plaintiff reasonably used all the appliances provided for stopping the truck without effect; that the brakes were in a defective condition; that the defendant had knowledge of this fact, and that he failed to inform the plaintiff thereof. Furthermore, it appears that the plaintiff had never driven the truck before the day on which the accident occurred, and only for a short time prior to the accident. The evidence therefore, if believed by the jury, was sufficient to entitle the plaintiff to a verdict in his favor, and we are not prepared to say that the court abused its discretion in refusing to set it aside.

The instructions requested and refused, upon which the second class of assignments of error is based, all relate to the testimony of the plaintiff concerning admissions made by the defendant on the occasion of his visit to the hospital. The court was asked to charge, in varying forms of words, that casual statements made in random conversations and testified to by bystanders or listeners should be scrutinized with great caution and are the weakest character of evidence. In view of the constitutional inhibition against comment on the facts by trial judges in their charge to juries, it has not been the policy of this court to encourage the giving of cautionary instructions. There are very few classes of evidence of any kind in which inherent weakness may not be found in the light of the facts of a particular case, and it would open the door to serious abuses to permit *nisi prius* judges, under the guise of cautioning the jury, to express their views concerning the weight and probative force of testimony. Such practice, if much indulged in, would seriously trench upon the constitutional right of trial by

jury, and make easy the accomplishment of the very evil sought to be guarded against. Moreover, the conversation in question was not a casual or random one, and the testimony concerning the statements made was not given by a chance or uninterested bystander. Here, if the evidence is to be believed, the defendant. made a deliberate statement to the plaintiff relative to the very ground of negligence upon which the action is based. If it be assumed that this important admission against interest was, in fact, made, it cannot be said to be weak or dangerous evidence. The weakness, if any, lies in the question of whether it *was* made, depending in this case upon the weight of credit to be given the testimony of the plaintiff in the light of his interest, prejudice, and bias, upon which subject the jury was properly charged by an appropriate instruction. There was no reversible error in refusing to give the requested instructions.

Lastly, it is contended that the court should have granted the defendants' request to discharge the jury and discontinue the trial of the case, for the reason that the plaintiff, while testifying as a witness in his own behalf, disclosed the fact that defendant carried liability insurance covering the accident in question. On cross-examination, the plaintiff was interrogated at length concerning a typewritten statement signed by him which had been procured by Mr. Murphy, one of the attorneys for defendants, during a visit made by the plaintiff to Mr. Murphy's office. On redirect examination, in an effort to show that the plaintiff had been imposed upon and not treated fairly when the statement referred to had been given, the several visits and conversations leading to the procurement of the statement were. gone into by plaintiff's counsel, during which the record shows the following transpired:

"Q. How did you come to go in there that day? A. Well, I went in there to get some money, because a fellow come up to my house and say he represent Cerini's lawyer. Q. He said he was from Mr. Murphy's office? A. He said he was represent Cerini's lawyer; and he says he wants to know what I am going to do; and the lawyer wants to see me; and I says all right; and I says where is the office of Cerini's lawyer, and he said, he is down in the Central building; so after fifteen days I come down and tell Mr. Murphy I need some money for an operation. I had my baby with me, and so Mr. Murphy he take my baby on his lap and he says, how much do you want; and I say, I want five hundred dollars; and he say, if you give me the baby, I will give you more than five hundred dollars; and I says, is that Cerini talking now, and he says yes; he say, I will go up and see him this afternoon, and you come back about three o'clock; and then the time he say that, he push a button and a lady come out and what I said she put down; and so I says, you don't have to write that down, there was a man there who took the statement all at my house; and he said, he lost that. Q. That is the yellow slips? A. Yes, the yellow slips; and the next day I went back, and I said to Mr. Murphy I am here again; and he said did you sign that paper yesterday? And I said yes; and he say, now, if you want any money you sue Cerini for it; I am not his lawyer; I am the insurance lawyer. Q. That is Mr. Murphy now? A. Yes."

The foregoing is the only reference to the subject of insurance made throughout the trial.

While it is the settled law of this state that the wanton intrusion into a personal injury case of the fact that the defendant carries liability insurance covering the accident in question is prejudicial error necessitating the reversal of a judgment for the plaintiff, we do not think this case falls within that principle, for three reasons: first, the mere statement that Mr. Murphy was the "insurance lawyer" did not advise the jury that the defendant was protected by indemnity insur-

ance; second, the statement was made on redirect examination relative to a matter brought into the case by the defendant and was incidental to a legitimate and proper inquiry; and third, the statement was not wantonly injected into the case through misconduct of counsel for the ulterior purpose of prejudicing the jury.

In *Edwards v. Burke,* 36 Wash. 107, 78 Pac. 610, an action to recover damages caused by the negligence of the defendant in maintaining and operating a passenger elevator, the following occurred:

"Q. (By counsel for plaintiff): Did you ever make a statement as to how this accident occurred, prior to today? A. I made one to Mr. Lamping. Q. Who is Mr. Lamping? Mr. Howe: I object, as immaterial. The Court: Answer the question. Mr. Howe: We except. A. He is the gentleman that insures the elevator. Q. Why did you make that statement to Lamping? A. He asked me to because—I don't know the reason why he wanted the statement from me how the accident occurred."

Judge Dunbar, in considering the question of whether this matter constituted prejudicial error within the rule under consideration, said:

"This would scarcely be testimony sufficient to sustain an allegation that the elevator had accident insurance at the time of this accident. But, even conceding that the jury might be led to believe from this statement that the appellants were protected by an insurance company from accidents which might occur in the operation of the elevator, it seems to us to be very justly contended by respondent's counsel that they were not responsible for it. It is asserted that they did not know who Mr. Lamping was, and that there was no intention of bringing the question of insurance before the jury. It does appear that, in the exercise of a proper cross-examination, this testimony incidentally cropped out. But certainly the question

whether or not the witness had ever before made any statement in relation to the accident was a proper subject of cross-examination, and, after eliciting the fact that he had made a statement to a Mr. Lamping, we know of no reason why the respondent should be prohibited from propounding the very natural inquiry as to who Mr. Lamping was. About all that can be said in this case is that, during the cross-examination, which was properly conducted, testimony was disclosed tending to show the insurance of the elevator.''

If the evidence in that case was not sufficient to inform the jury that the defendants had accident insurance on the elevator, certainly the evidence in this case was not sufficient to show the defendants had such insurance on the automobile truck. Furthermore, the offending testimony in that case was brought out incidentally on cross-examination relating to a legitimate subject of inquiry developed upon the examination of the witness in chief. Here the reference to insurance ''cropped out'' on redirect examination touching pertinent matter brought into the case by the defendant on cross-examination. In the instant case, counsel for defendant having gone into the matter of the statement signed by the plaintiff, it was entirely proper for the plaintiff to show on redirect all the circumstances under which the statement was made and to develop the entire conversation relating thereto. The evidence, therefore, was competent, and the mere fact that it may have been prejudicial did not render it inadmissible. If the effect was harmful, such was the defendants' misfortune, rather than the plaintiff's fault. The case falls squarely within the principle announced in *Moy Quon v. Furuya Co.*, 81 Wash. 526, 143 Pac. 99. In that case the casualty company, through its claim agent, had plied the injured man, while he was in the hospital, with carefully written questions, and the claim agent was thereafter produced by the appellant as a

witness for the purpose of discrediting respondent's testimony. After he had finished his direct testimony, respondent's attorney, on cross-examination, developed the fact that the witness was claim agent for the casualty company with which appellant carried liability insurance. In considering the matter, Judge Ellis said:

"In a personal injury suit, the fact that the defendant carries liability insurance is wholly immaterial on the main issue of liability. Being essentially prejudicial to the defendant, its wanton intrusion by the plaintiff is positive error constituting ground for reversal. This is the established rule in this state. . . . This rule, however, was never intended to override the equally positive and salutary principle that a party has the right to cross-examine the witnesses produced by his adversary touching every relation tending to show their interest or bias. Many facts wholly immaterial, and even positively prejudicial, on the main issue may be material as touching the credibility of a witness. When a party offers a witness, the relations of that witness to the thing in issue and his interest in the result become material as affecting his credibility. It is universally held that these things may be developed on cross-examination. . . . The distinction between the case here presented and those relied upon by the appellant is found in the fact that in those cases the matter of insurance was first intruded into the trial without reasonable excuse. In the case here, it was not only proper, but necessary that the jury be advised of the relation of the witness and his consequent interest in the suit, as a matter clearly bearing upon the credibility and weight of his testimony."

It is true the evidence in that case was held admissible as tending to affect the credibility of the witness, yet the effect of the opinion is that, if the testimony with reference to insurance is not intruded into the case without excuse, but performs the office of competent evidence, its prejudicial character does not

warrant a reversal of the judgment. Here the evidence was competent, though for a different purpose—to show the circumstances under which the written statement was obtained—it being a part of a conversation first placed before the jury by the appellants. In *Jensen v. Schlenz*, 89 Wash. 268, 154 Pac. 159, Judge Chadwick said:

"The extent of our holding is that if it be apparent that counsel deliberately sets about, although in an indirect way, to inform the jury that the loss, if any, will fall upon an insurance company instead of the defendant, his conduct will be held prejudicial. . . . If such information comes about naturally and is incident to a lawful inquiry, there can be no error. If it is injected in a collateral way, it is held to be harmful. The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel."

Appellants rely chiefly upon *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59. In that case, however, the testimony concerning the liability insurance was wantonly and unnecessarily injected into the case, and was not competent for any purpose. It is not applicable to the facts of this case, for the reasons already stated.

The judgment is affirmed.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.