[No. 30254.   Department Two.   March 23, 1948.]

CLAUDE R. WILLIAMS, *Respondent,* v. GEORGE HOFER *et al.,*
*Appellants.*[1]

[1]Reported in 191 P. (2d) 306.

*Bernard J. Lehrer,* for appellants.

*Cameron Sherwood* and *Herman H. Hahner,* for respondent.

STEINERT, J.—Plaintiff, Claude R. Williams, brought suit to recover damages for personal injuries alleged to have resulted from the negligent acts and omissions of the defendants, George Hofer and Freda Hofer, husband and wife.

The complaint alleged that plaintiff was employed to do general farm work on land owned by the defendants; that while so employed, on the day of the accident here involved, he was directed by George Hofer, to whom we shall hereinafter refer as though he were the sole defendant, to use for riding purposes a certain horse in herding cattle upon defendant's farm; that the horse was vicious, unmanageable, and not broken to riding, as the defendant well knew, or in the exercise of ordinary care, prudence, and caution should have known; that defendant failed to inform plaintiff of the vicious qualities of the horse, although defendant well knew that plaintiff was wholly ignorant of the character of the animal and the dangers incident to riding it on the particular occasion; that defendant then and there stated and represented to plaintiff that the horse was in fact broken to riding, which statement defendant knew, or in the exercise of ordinary care should have known, to be untrue; that thereupon plaintiff mounted the horse, which, after proceeding a short distance under plaintiff's guidance,

balked and reared, and thereafter continued so to do, with the result that plaintiff was thrown violently to the ground and severely injured.

Defendant by answer denied each and every allegation of the complaint, and further set up, as affirmative defenses, contributory negligence and assumption of risk on the part of plaintiff, which the latter in turn denied.

The cause was tried to a jury. At the conclusion of plaintiff's evidence, the defendant moved for a nonsuit, which was denied. The defendant then rested without introducing any evidence in his behalf. The jury returned a verdict in favor of plaintiff, and, after denial of defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, the trial court entered judgment on the verdict. Defendant appealed.

Appellant assigns as errors the rulings of the trial court (1) in denying his motion for nonsuit; (2) in denying his motion for judgment notwithstanding the verdict or for new trial; (3) in refusing to give an instruction requested by him; (4) in giving instruction No. 6; (5) in giving instruction No. 9; and (6) in refusing to grant appellant's motion for mistrial.

The first two assignments of error present the question of whether the evidence introduced by the respondent was sufficient to make a case for the jury and to support the verdict subsequently rendered by it.

■ A motion for nonsuit or a motion for judgment notwithstanding the verdict admits the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265, and cases therein cited; *Fiskaa v. Miller,* 27 Wn. (2d) 242, 177 P. (2d) 707.

■ Another rule, frequently expressed by this court, is that in ruling upon a challenge to the sufficiency of the evidence, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict, no element of dis-

cretion is involved, and such motions can be granted only when it can be held as a matter of law that there is no evidence nor reasonable inference from evidence to sustain a verdict for the opposing party. *Knight v. Trogdon Truck Co.,* 191 Wash. 646, 71 P. (2d) 1003; *Graham v. Police & Firemen's Ins. Ass'n,* 10 Wn. (2d) 288, 116 P. (2d) 352.

With these rules in mind, we shall state the facts as the jury was entitled to find them from the evidence.

Appellant owned a ranch, or farm, in Walla Walla county and had operated it about four years at the time of the event here involved. Operations on the farm included the raising of beef cattle. Respondent, aged fifty-seven years, was employed by appellant as a general farm hand, doing whatever was necessary to be done on the place, particularly ploughing, planting and harvesting crops, repairing fences, grubbing brush, and looking after the cattle. He had worked for appellant in that general capacity for the greater part of a period of three years.

To look after the cattle properly it was necessary to use a horse. Respondent was the only person on the ranch who was experienced in riding horses. Although appellant himself had done some horseback riding, he was not an experienced rider.

A riding horse which the appellant formerly owned and which respondent had customarily used in rounding up the cattle was sold by appellant about six months prior to the accident here in question. Thereafter, for the time being, respondent, in caring for the livestock, was required to travel on foot. This proved exceedingly difficult and inexpedient. As respondent expressed it, "Chasing the cattle on foot, I had an awful time corralling them." On one recent occasion the cattle had gotten away by swimming to the opposite side of a river, thus frustrating the attempt to corral them. For these reasons, respondent requested appellant to purchase another horse with which the cattle could be herded, and cautioned him to get a "perfectly gentle horse," one that appellant himself could ride. Appellant agreed to do so.

Shortly thereafter, on a Friday, appellant attended an auction sale in Walla Walla and there purchased the horse which is involved in this action. Appellant did not know the former owner of the horse nor anything about him except that he lived in Waitsburg. It does not appear from the evidence that appellant made any inquiry as to the character of the horse, its habits, or its adaptability for riding. Respondent was not present when the horse was purchased, nor did he have any prior knowledge concerning it. Later that day, appellant reported the purchase to respondent, describing the horse, saying that he had seen it being ridden around in the auction ring and assuring respondent that the horse was "broken to ride."

On the following day, Saturday, respondent and appellant brought the horse, in a truck, from Walla Walla to the ranch, where, for the next three days, respondent took care of the animal, feeding, watering, and stabling it, but not attempting to ride it. During that period, he had no difficulty whatever with the horse, and, so far as he could tell, it was gentle in every way.

On Tuesday, three days later, appellant announced to the respondent that the cattle, which had been out for about two weeks, were to be rounded up. Pursuant to the previous understanding with reference to the use of the horse, respondent brought it from the stable and, in the presence of appellant, saddled and mounted it. Starting forth, the horse proceeded a distance of about fifty yards and then balked, putting its head down and going around slowly in a circle. Respondent pulled on the neck reins, but found that the horse was not broken to respond to that method of control. He then gave the animal a light slap over the rump with the reins and in this manner brought it "out of the balk."

The horse straightened up and went forward for about a hundred yards, and then repeated the previous performance. Respondent again struck it lightly with the reins and once more succeeded in bringing it out of the balk. There was nothing about either of these two incidents to cause

respondent any apprehension, since the horse gave no indication that it was unmanageable.

However, after proceeding about a hundred yards further, the horse suddenly went into a third balk, and, this time, began twisting and bucking from one side to the other, and then, by rearing and lunging forward, threw respondent to the ground, thereby breaking his arm and otherwise bruising him severely. The horse continued bucking for several hundred yards and then ran away. It was not recaptured until several days later. Appellant thereafter sold the horse, because it was evident to him that it was unmanageable.

The evidence in the case was clearly sufficient to warrant the jury in finding, as we must assume that it did find, that the horse was not broken to riding, was unmanageable, and possessed a vicious tendency to balk, twist, buck, rear, and lunge whenever an effort was made to ride it.

Although no case arising in this state, similar in fact to the one presented here, has been called to our attention, there are many cases from other jurisdictions involving the question of the employer's liability for injuries which an employee has sustained from animals belonging to the employer, particularly animals furnished by the employer for performance of work by his employee.

The general rule adopted and followed by the courts is that, where a servant is required to use a horse in the performance of his work, it is the duty of the master to exercise reasonable care to furnish to the servant a reasonably safe horse with which to perform the work, and that, in case of injury to the servant, the master will be held liable for any failure to observe that obligation. 35 Am. Jur. 625, Master and Servant, § 196; Notes, 26 A. L. R. 871 (1923), 42 A. L. R. 226 (1926), 60 A. L. R. 468 (1929). Under these citations will be found many cases upholding the rule.

Expressed in a slightly different way, the rule that a master must use reasonable care to furnish his servant with reasonably safe instrumentalities extends to and includes horses and other animals used in his work, as well as wagons, and other vehicles, harnesses, and appliances con-

nected therewith. 39 C. J. 343, Master and Servant, § 464, and cases cited in the footnotes.

■ Under the law as heretofore stated, the jury could well have found from the evidence that appellant had not exercised reasonable care in the matter of furnishing respondent with a reasonably safe horse with which to work, and that, without making sufficient inquiry or investigation concerning the character of the animal, he had represented to respondent that it was gentle and capable of being safely used for the purposes to which it was intended to be put. Upon such findings, liability of the appellant would necessarily follow.

Appellant's principal contention with respect to the character of the horse and the dangers incident to riding it is that, under the circumstances shown, respondent assumed the risk, or was guilty of contributory negligence, in attempting to ride the animal, particularly after it had balked twice before finally bucking and throwing respondent from the saddle.

■ While a servant assumes such dangers as are ordinarily and normally incident to his occupation, the ordinary risks which he does assume are those existing after the master has done that which he is bound to do for the safety of his servant, unless the servant had knowledge of the danger or the danger was so obvious that knowledge thereof should be imputed to the servant. *Lander v. Shannon,* 148 Wash. 93, 268 Pac. 145.

In the cited case, we said:

"The ordinary risks which are assumed by a servant are those existing after the master has done everything that he is bound to do for the purpose of securing the safety of his servant.

"One employed to do general farm work does not assume the risk of being placed in charge of a vicious animal which he *is* assured *is* gentle,—or which he has no warning is vicious.

"It is only when it appears to be clear that the servant had knowledge of and appreciated the danger of his employment, or that the danger was so obvious or apparent that knowledge should be imputed to him, that the court may declare as a matter of law that he is not entitled to recover

from the master for an injury received therefrom.

"Assumption of risk by a servant is not predicable from knowledge of the conditions alone; it must further appear that the danger was, or should have been, appreciated."

■ Appellant argues that respondent should have dismounted when the horse balked the first or second time, and that by his failure to do so he assumed the risk of what subsequently occurred. We cannot agree with this contention. There was nothing about the action of the horse in the first two instances which should have led respondent to believe that the animal was recalcitrant and unmanageable. On the contrary, in each of those instances respondent had been able to bring the horse "out of the balk" by striking it lightly with the reins.

In any event, the matter was properly submitted to the jury to decide as a question of fact, and it did so decide it. We think it too much to say, as a matter of law, that because respondent did not immediately dismount he assumed the risk of injury. *Walters v. Sievers,* 107 Wash. 221, 181 Pac. 853.

For the same reasons, we do not believe that it can be held, as a matter of law, that respondent was guilty of contributory negligence in failing to dismount instanter. That, too, was a question for the jury to decide.

■ Assignments of error Nos. 3 and 4 may be considered together, as they present the same question. Appellant requested the court to give an instruction reading as follows:

"You are instructed that the plaintiff [respondent] cannot recover in this action unless it is shown by a preponderance of the evidence that the horse in this case was vicious and known by the defendants to be vicious."

The court refused to give this instruction, and, instead, gave its instruction No. 6, reading:

"You are instructed that the defendants [appellants] were not insurers of the safety of the plaintiff [respondent] and are not liable to the plaintiff merely because the plaintiff received an injury while working for the defendants.

"It was the duty of the defendants to exercise reasonable care to furnish the plaintiff with a reasonably safe horse for the performance of his task and to make a reasonable in-

quiry and investigation to determine that the horse furnished the plaintiff for riding was reasonably safe for the purpose. *This rule would not apply if you find that the defendants did not know whether said horse was suitable or unsuitable for riding and the plaintiff was aware of their lack of knowledge thereof.*

"It was the duty of the defendant, George Hofer, to act as an ordinarily prudent and careful man would have acted under like or similar circumstances and if you find that he failed to do so and his failure was the proximate cause of the accident and if you find that the plaintiff was not guilty of contributory negligence, then your verdict should be for the plaintiff.

"Likewise it was the duty of the plaintiff to have acted as an ordinarily prudent and careful person would have acted under like or similar circumstances and if you find that he did not so act and such failure directly and proximately contributed to said accident, then he would be guilty of contributory negligence and your verdict should be for the defendants." (Italics ours.)

The only exception taken by the appellant to the refusal of the trial court to give his requested instruction, as well as to the giving of instruction No. 6, was his claim that the jury should have been instructed that, in order to find appellant negligent, not only must the horse have been vicious, but *its viciousness must have been known to appellant*; in other words, that knowledge on the part of appellant concerning the vicious character of the horse was an indispensable element to a recovery by respondent.

It should be stated, in this connection, that respondent himself excepted to that portion of instruction No. 6 which we have italicized, but for reasons which are obvious his exception need not now be considered.

Under the law as previously stated in our discussion of the first two assignments of error, the gravamen of this action was not simply the viciousness of the horse, but rather the negligence of the appellant in failing to exercise reasonable care to furnish respondent with a reasonably safe animal with which to work, and, without making sufficient inquiry concerning the character of the horse, in representing to the respondent that it was gentle and capable of being safely used for the tasks to be performed with it.

The action was predicated not upon the theory that the horse was "possessed of an evil propensity and accustomed to attack and injure mankind," according to the formula of the old common law, but upon the claim that appellant had failed in his duty to furnish respondent with a reasonably safe instrumentality with which to work, representing that it was perfectly safe, although appellant neither had knowledge that such was the fact nor had made reasonable investigation or inquiry to ascertain whether the horse was really safe.

Instruction No. 6, coupled with other instructions given by the court, properly advised the jury as to the law with respect to appellant's duty regarding the care to be exercised by him and with respect to the elements of negligence required to establish liability on his part. The evidence in the case was sufficient to warrant the jury in finding against the appellant on the issues presented by those instructions. We discern no error in the court's refusal to give appellant's requested instruction or in giving instruction No. 6.

■ The fifth assignment of error is directed to instruction No. 9, in which the court told the jury, in effect, that if at the time in question an emergency was presented, which was not created by respondent himself, under such circumstances respondent would not be required to exercise the same degree of "skill and judgment" as would be expected of him if no such emergency was presented.

The exception taken by appellant to this instruction was that no emergency was raised by the issues, nor shown by the evidence. Appellant's contention with reference to this assignment of error is that the jury was in substance told by this instruction that the conduct of the horse on the third balk created an emergency with which respondent was then confronted. Appellant's argument on this assignment is contained in one short paragraph, as follows:

"It is submitted that with two prior balks and with ample time to dismount after each of them, plaintiff [respondent] can hardly be said to have faced an emergency on the third balk; certainly plaintiff's own testimony as to his actions at the time of the third balk negatives the thought that he himself was under any apprehension that he was facing an

emergency. It does not take an experienced horseman to know that when a horse balks, places its head between its forelegs and starts to circle, that the horse is preparing to buck and try to unseat the rider."

To this argument, respondent in his brief retorts:

"We submit that it does not take a horseman to know that an emergency exists when a situation is presented suddenly such as revealed by the evidence in this case."

Whether or not an emergency existed and whether or not respondent should, under the circumstances, have dismounted immediately upon the first or second balk, are questions which a jury residing in a horse-raising country is presumably better prepared to determine than a tribunal whose daily tasks involve no greater physical hazards than the rotations of a swivel chair.

As has already been stated, the horse upon the occasion in question balked twice without bucking, and apparently there was nothing about either of those incidents which gave respondent any apprehension. Upon the third balk, followed by bucking and twisting, an emergency did arise, requiring respondent to determine instantly whether to endeavor to dismount or "to ride it out." We are not prepared to say that respondent was negligent in failing at once to abandon his seat in the saddle in whatever way he could, nor to say that the jury erred in deciding otherwise. We are of the opinion that the trial court was warranted in giving the instruction.

Appellant's final assignment of error relates to the court's refusal to grant appellant's motion for mistrial.

During the trial, respondent called his attending physician as a witness, and upon his direct examination the following occurred:

"Q. You haven't submitted a bill in this case, what is a reasonable charge for you to make Mr. Williams? A. I haven't submitted a bill to Mr. Williams and I don't recall what that was. As I recall I sent a bill *to the insurance company*." (Italics ours.)

Counsel for appellant promptly moved for a mistrial, upon the ground that the words "insurance company"

were injected into the case. The court denied the motion but instructed the jury that it should disregard the remark "wholly and entirely," that the remark had nothing to do with the case and should not be considered by the jury, and that the jury should base its "judgment on the evidence without that remark in any wise being considered."

■ It is undoubtedly the general rule in this state, in personal injury cases, that the fact that the defendant carries liability insurance is entirely immaterial on the main issue of liability, and that the wanton intrusion of such fact by the plaintiff is positive error, essentially prejudicial to the defendant, and constitutes ground for reversal. *Moy Quon v. Furuya Co.,* 81 Wash. 526, 143 Pac. 99; *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159; *Gianini v. Cerini,* 100 Wash. 687, 171 Pac. 1007; *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12.

Where, however, the mention of insurance is inadvertent and it appears that neither the attorney nor the witness connected with the case deliberately, willfully, or collusively injected such fact into the proceedings before the jury, a mistrial will not be granted. *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801, and cases therein cited; *Popoff v. Mott,* 14 Wn. (2d) 1, 126 P. (2d) 597.

As stated in *Jensen v. Schlenz, supra,*

"The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel."

■ Appellant contends that the showing of insurance was not inadvertent, but that the question propounded to the witness was calculated to elicit that very information, and that the answer was directly responsive to the question propounded. Respondent vigorously disclaims any intent to inject that matter into the record, and asserts that the objectionable portion of the witness' answer was entirely unresponsive to the question that immediately preceded it.

Ruling upon the motion for new trial, the trial judge expressed the opinion that the question propounded to the witness was not intended in any wise to elicit the statement concerning the insurance company, and that the answer

making such disclosure was inadvertent and unresponsive to the question. Due consideration of the matter leads us to the same conclusion.

This disposes of all the assignments of error. The judgment is affirmed.

MALLERY, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.

[1]Reported in 191 P. (2d) 302.