STYGLES, Respondent v. ELLIS, Appellant

(123 N.W.2d 348)

(File No. 10048. Opinion filed September 23, 1963)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Defendant and Appellant.

**Bangs, McCullen, Butler & Foye** and **Potter & Crabb,** Rapid City, for Plaintiff and Respondent.

HOMEYER, J. This action was brought by Clifford N. Stygles as special administrator of his wife's estate to recover damages for her death. Upon a jury verdict, the court entered judgment for plaintiff in the amount of $20,000. Defendant appeals.

Defendant's main contentions are: (1) that there was no substantial credible evidence to sustain a finding that he was negligent; (2) that plaintiff's decedent was guilty of contributory negligence as a matter of law barring recovery; (3) that the court erred in denying a motion for mistrial on claimed misconduct of plaintiff's counsel.

Mrs. Stygles was killed instantly on November 28, 1961, at about 5:15 p.m. on U. S. Highway 16 about 3 miles south of Rapid City. On that day she had driven from her home at Keystone to Rapid City accompanied by her three children, aged 5, 4 and 2 years, and by a neighbor, Mrs. McNulty, and two of her children, aged 4 years and 9 months. Her death occurred on the return trip when she was struck by defendant's car.

Mrs. Stygles was driving south on Highway 16. She turned on the lights at the top of the Reptile Garden hill. Shortly thereafter it was discovered that the older McNulty child had fallen from a rear window which apparently had been opened by the children in the back seat. Mrs. Stygles brought the car to a stop and Mrs. McNulty got out and hurried back over the road looking for her child.

Defendant and his wife had been to Sanator and were returning to Rapid City. He was driving. In the vicinity of Hill City, he came upon a red pickup traveling in the same direction. We herein refer to the pickup as the Duster pickup. Soon afterwards he became aware of a third car following him. We herein refer to the trailing car as the Mills car. These three vehicles were proceeding north on Highway 16, caravan style, with lights on, at a speed of about 45 to 50 miles per hour. The middle car struck and killed Mrs. Stygles on the highway.

U. S. Highway 16 at the site of the accident is 26 feet wide. The tarred portion measures 22 feet 9 inches. The balance of the roadway is in grass about equally divided on each side and slopes from the shoulder at about a 45-degree angle into grassy

side ditches or borrow pits. It was dusk to dark. The road was dry. Atmospheric conditions were normal. The road north of the accident site is on a slight downgrade with visibility unobscured for a considerable distance. To the south there is a slight upgrade which crests at about 300 feet and then falls rather abruptly. The center of the blacktop is marked with a broken white line. There is a solid yellow "no passing" line west of the center line. The Stygles car is 6 feet 2 inches in width. The left door when open projects 3 feet 3½ inches from the car. Defendant's car is 6.2 feet in width.

With some inconsistency and contradiction which is not uncommon when witnesses are questioned on specific details in accident cases, the pertinent testimony of Mrs. McNulty was that Mrs. Stygles stopped her car close to and parallel with the west shoulder of the road; that Mrs. McNulty slipped or tripped on the grassy incline as she got out of the car; that she was excited; that she observed the position of Mrs. Stygles and her car at least twice from the time it was stopped until she (Mrs. Stygles) was struck; that the car remained in a stationary position until Mrs. Stygles was struck, after which it moved slowly backward into the west ditch; that Mrs. Stygles was outside the car and both she (Mrs. Stygles) and the car were west of the yellow line; that the car door was only partially open and did not extend over the yellow line; that she saw two headlights of an approaching car (Duster pickup) that missed Mrs. Stygles and two headlights of a following car that hit Mrs. Stygles' car and hit her (Mrs. Stygles).

A police officer who investigated made a diagram of the accident scene which was received in evidence. Mrs. McNulty was asked to place a mark where Mrs. Stygles was standing when she was struck. The mark made by her on the diagram placed Mrs. Stygles well inside and west of the yellow line.

Photographs and testimony establish without dispute that flesh was found on the yellow line; that a large pool of blood was east of the center line; that the body was lying near the center of the road straddling the yellow line at an angle; that Mrs. Stygles died from a head injury. Flesh and blood were found on the left front tire, on both left wheels, along the underside of the

left rocker panel and under the left door of the defendant's car. There was a dent and red paint on the top of the left front headlight of defendant's car and a dent in the left door of the Stygles car.

Witnesses estimated the distance between the Duster pickup and defendant's car at the time of the accident from 60 to 75 feet to as much as 150 to 250 feet. All witnesses agreed that the Stygles car was west of the center line with disagreement as to the distance from the center line, but permitting inferences that the door when open or partially open may or may not have been east of the center line. Likewise, there was a conflict in the testimony as to whether or not Mrs. Stygles was west or east of the center line and inferences permissible which could have placed her on either side of such center line.

The driver of the Duster pickup and the Mills car both avoided striking Mrs. Stygles or her body. An investigating officer obtained a written statement from the driver of the Mills car immediately after the accident. This statement was received in evidence without objection and read to the jury. In it, the driver of the Mills car said that he saw a body rolling under the car (defendant's) and coming toward the center of the road.

Plaintiff maintains that the evidence was sufficient to support the jury's finding that defendant was negligent in (1) driving west of the center line; (2) following too closely for the speed he was traveling; and (3) failing to keep a proper lookout. Such negligence plaintiff contends was the proximate cause of his wife's death. Defendant urges that there was no substantial credible evidence to sustain a finding of negligence on all or any of such violations of the rules of the road and that the court erred in denying defendant's motions for directed verdict and judgment notwithstanding verdict.

■ ■  We have examined the record carefully and pertinent portions have been set forth in some detail. We are satisfied that a jury question was presented. The jury having rendered its verdict for plaintiff, all conflicts in testimony and reasonable inferences therefrom have been resolved in plaintiff's favor. There was evidence and inferences from the evidence on which the

jury could reasonably conclude that defendant negligently drove on the wrong side of the center line; that he was following the Duster pickup too closely for the speed he was traveling; and that he did not maintain a proper lookout. The trial court properly submitted these issues to the fact-finding body.

██ Defendant does not seriously contend that there was no evidence of negligence, but insists that there was no substantial credible evidence of negligence. The thrust of his argument is that Mrs. McNulty should not be believed because she had given a contrary written statement shortly after the accident; that her point of observation was such that she could not possible see Mrs. Stygles' position on the road; that the physical facts make her testimony incredible.

Seven days after the accident an investigator for defendant's insurance company took an unsworn statement from Mrs. Mc-Nulty. The statement was written by the investigator and signed by Mrs. McNulty. In it Mrs. McNulty said she didn't see the accident. There are other discrepancies between her testimony and the statement. It was offered and received in evidence during cross-examination of Mrs. McNulty by defendant's counsel. It was admissible as impeaching evidence. Mrs. McNulty testified that she had asked that a correction be made in the statement which was not done; also, that her memory on details improved subsequent to the time when the statement was given. Extra judicial statements may be explained, rebutted or contradicted at the trial and it is for the trier of facts to determine the weight to be given thereto. Dorn v. Sturges, 157 Neb. 491, 59 N.W.2d 751.

██ Mrs. McNulty testified she observed the accident about the time that she picked up the child; that she was near the center of the road; that she was told this was about 900 feet from the accident scene. Defendant and his wife and two witnesses who were in the Duster pickup placed her much closer, about 125 feet from the accident scene. The area of the accident was illuminated by the headlights of the Duster pickup, by the headlights of defendant's car, and by the head and rear lights of the Stygles car. On this record, we cannot say that her vantage point did not permit her to see the accident or Mrs. Stygles' position on the road and that her testimony was incredible. It re-

quires an extraordinary case for any court to regard sworn testimony as incredible and unbelievable. It is for the jury to determine its weight and credibility. Pooley v. Leith, 62 S.D. 554, 255 N.W. 153.

In Pooley, a witness observed the position of colliding cars during late twilight hours from a point 20 rods east and 70 rods south of the collision and placed one car on the right side of the road and the other a foot or so on the wrong side. In affirming judgment for plaintiff on a jury verdict where there was a direct conflict in the evidence on the position of the cars, we said it would be presumptuous for this court to say that this witness' testimony was utterly incredible and unworthy of belief.

The physical facts in this case were subject to different inferences. They do not positively negate the sworn testimony. It is seldom possible to reconstruct and re-enact the details of an accident from the physical facts available following an accident. We believe it was for the jury to consider both the physical facts and the sworn testimony and make a fact determination as to whether or not the defendant was negligent. The physical facts did not preclude the jury from so finding. See Schumacher v. Storberg, 69 S.D. 103, 7 N.W.2d 141.

■ Defendant contends that Mrs. Stygles was contributorily negligent as a matter of law in maintaining a dangerous position on the highway after the child had fallen from the car and while awaiting the return of Mrs. McNulty; that if an emergency was present when it was discovered that the child was gone and she stopped her car, it had ceased to exist when the accident happened. We have reviewed the record and conclude that it was for the jury to determine under all the facts and circumstances if Mrs. Stygles was negligent. Also, if negligent, whether or not such negligence was a proximate contributing cause of her death. We are not prepared to say as a matter of law that either Mrs. Stygles was negligent or, if negligent, that such negligence was a contributing cause of her death. The jury may have concluded that Mrs. Stygles was negligent or slightly negligent; yet if she and her car were at all times west of the center line, they could have found that the sole proximate cause of her death was the negligence of the defendant in one or all

of the particulars set forth above. Descombaz v. Klock, 58 S.D. 173, 235 N.W. 502; Fester v. George, 71 S.D. 424, 25 N.W.2d 455; Schuetzle v. Nash-Finch Co., 72 S.D. 588, 38 N.W.2d 137.

■ Defendant also contends that since the jury allowed the maximum death recovery, the verdict should not stand because Mrs. Stygles was at least guilty of slight negligence in permitting three small children to ride in the rear seat in an automobile equipped with pushbutton electric windows that could be opened from the rear seat. We cannot say as a matter of law that this constituted even slight negligence. The evidence shows that the windows were closed when Mrs. Stygles left Rapid City. The jury may have concluded that she did all that was required of a reasonably prudent person under the circumstances.

■ We conclude that reasonable minds could differ and on the whole record it was for the jury to determine the issues of negligence, contributory negligence, if any, and proximate cause. Where evidence is in conflict and where different reasonable inferences can be drawn from the evidence, an appellate court leaves finding of facts to the jury. Myers v. Quenzer, 79 S.D. 248, 110 N.W.2d 840; Bogh v. Beadles, 79 S.D. 23, 107 N.W.2d 342.

■ We have alluded to the written statement obtained by the insurance investigator which was received in evidence. After receipt of such statement plaintiff's counsel attempted to interrogate Mrs. McNulty and establish the identity and interest of the person who took her statement. The statement was taken by a Mr. Hardin, an employee of the insurance company that carried the public liability insurance on defendant's car. The court did not permit the interrogation and after plaintiff's counsel made an offer of proof, the interrogation was again denied. Counsel then told his witness that the person who took the statement must remain anonymous and she wasn't to mention the words "insurance adjustor." On redirect examination Mrs. McNulty was asked:

"Q Mr. Whiting refers to a statement which was supposedly taken on December 5th, 1961, by a person that must remain anonymous. Did you write this statement in your own handwriting? A No, I didn't.

"Q At the conclusion of the statement did you instruct the anonymous person who took this statement to make changes? A There was one change that I asked him to make, that I can definitely remember."

Mrs. McNulty then testified to the requested change and the fact that no change was made. At the next recess and after several other witnesses had testified defendant moved for a mistrial on grounds that plaintiff's counsel was guilty of misconduct in prefacing his question with the statement that the person who took the statement must remain anonymous thereby attempting to have the jury conclude that such person must be connected with an insurance company. The court denied the motion. The same matter was again urged on motion for new trial which was denied.

We have reviewed the record carefully with respect to the circumstances giving rise to the claimed misconduct. We find nothing to indicate bad faith on the part of counsel, or any attempt or design by this reference to advise the jury that an insurance company was defending the action. A not too dissimilar situation was present in the case of Schuetzle v. Nash-Finch Co., 72 S.D. 588, 38 N.W.2d 137, where an impeaching statement was received in evidence on cross-examination. On redirect the witness testified he did not know the name of the person who took and wrote the statement but said that "he introduced himself as the insurance agent." In that case this court said that the answer of the witness was not responsive and could not be reasonably anticipated by plaintiff's counsel. The court quoted with approval from Gianini v. Cerini, 100 Wash. 687, 171 P. 1007, 1009:

"* * * In the instant case, counsel for defendant having gone into the matter of the statement signed by the plaintiff, it was entirely proper for the plaintiff to show on redirect all the circumstances under which the statement was made, and to develop the entire conversation relating thereto. * * *"

In Schuetzle, we said:

"* * * counsel for defendants introduced the written statement in evidence as a part of the cross-exam-

ination of the witness and this made it permissible for plaintiff to show all the surrounding circumstances on redirect examination."

The almost universal rule is stated in 98 C.J.S. Witnesses § 422, p. 232:

"Where a witness in an action for injuries is cross-examined as to a written statement which he had made, it is not improper for the witness to be asked in whose behalf the one who procured the statement was acting and elicit the fact that he was acting for an insurance company, and, similarly, after cross - examination has shown that the witness made a statement to someone, it is not improper to ask to whom the statement was made and elicit the answer that it was made to an insurance man."

And in 4 A.L.R.2d, § 9, p. 782, it is stated:

"As a general rule, where a previously written statement is produced in court and used for the purpose of impeaching plaintiff or one of his witnesses, it is proper for plaintiff's counsel to show that the person procuring such statement was a representative of defendant's insurance company."

Cases which support this rule are Gleason v. Baack, 137 Neb. 272, 289 N.W. 349; Long v. Crystal Refrigerator Co., 134 Neb. 44, 277 N.W. 830; Treftz v. Kirby, 7 N.J. Misc. 555, 146 A. 688; Arizona Cotton Oil Co. v. Thompson, 30 Ariz. 204, 245 P. 673; Pinkerton v. Oak Park National Bank, 16 Ill.App.2d 91, 147 N.E.2d 390; Gegan v. Kemp, 302 Mich. 218, 4 N.W.2d 525; Rosenberg v. Mageda, 251 Mich. 696, 232 N.W. 397; Jankowski v. Clausen, 167 Minn. 437, 209 N.W. 317; Webb v. Hoover-Guernsey Dairy Co., 138 Or. 24, 4 P.2d 631.

We believe the trial court improperly denied plaintiff the right to ascertain the identity of the statement taker and his interest in the litigation. There was a conflict between the testimony of Mrs. McNulty and the mute effect of the statement. Counsel had the right to seek to inform the jury of the interest of the

person who took the statement so it could be considered in weighing conflicting testimony and evidence. The form of the questions asked was far short of what he was entitled to show so far as this impeaching and contradictory statement is concerned. There was no misconduct.

The judgment is affirmed.

All the Judges concur.