Joan LACHER and Leo Lacher, Plaintiffs and Appellants,

v.

Albert W. ANDERSON and Judy Anderson, Defendants and Appellees.

Civ. No. 940025.

Supreme Court of North Dakota.

Dec. 20, 1994.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiffs and appellants.

Robert J. Snyder, of Snyder Coles Lawyers, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

Joan and Leo Lacher appeal from a district court judgment dismissing their action against Judy and Albert Anderson. We affirm.

### I

On March 3, 1986, Joan Lacher attended a bridge club gathering at the Andersons' home. While looking for a bathroom, Joan opened a door, stepped into the darkness, and fell down a flight of stairs. Joan suffered injuries and was hospitalized.

On March 11, eight days after the accident, Bob Smith, an adjuster for the Andersons' insurer, visited Joan in the hospital. Joan voluntarily gave a tape-recorded statement describing her recollection of the accident.

The Lachers brought this action for personal injuries and loss of consortium caused by the Andersons' negligence. The Lachers alleged the condition of the home was unsafe and the Andersons should have given appropriate warnings to Joan. The case was tried to a jury, which returned a verdict finding the Andersons had not been negligent. Judgment was entered and the Lachers appealed.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. §§ 28–27–01 and 28–27–02. The appeal was timely under Rule 4(a), N.D.R.App.P.

### II

The Lachers assert the trial court erred in refusing to allow them to present evidence that Bob Smith, who recorded Joan's statement in the hospital, was employed by the Andersons' insurance company. The Andersons used the transcribed statement to impeach Joan at trial. Smith did not testify before the jury, although he did testify in chambers when the Lachers attempted to make an offer of proof on this issue.

■ In a jury case, disclosure that a party had liability insurance is generally improper and may constitute prejudicial error requiring a mistrial. *See Neibauer v. Well,* 319 N.W.2d 143, 145 (N.D.1982). Evidence about liability insurance may, however, be relevant and admissible for certain limited purposes under Rule 411, N.D.R.Evid.:

"Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability if offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

■ We recently addressed the application of Rule 411 in *Filloon v. Stenseth,* 498 N.W.2d 353 (N.D.1993). We concluded that, when evidence of insurance is offered under Rule 411 to show bias or prejudice of a witness, the court must employ the balancing test under Rule 403, N.D.R.Evid., which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *Filloon,* an insurance adjuster was an eyewitness to a vehicle-bicycle accident. He then served as the adjuster on the case for the driver's insurance company. His testimony at trial corroborated the driver's story that the bicycle rider was not in the crosswalk when struck. The trial court refused to allow any evidence disclosing the adjuster's occupation or connection with the driver's insurance company. Because the trial court in *Filloon* had failed to employ the balancing test under Rule 403, we reversed and remanded for a new trial:

"Rule 411 expressly allows the introduction of insurance evidence to show bias or prejudice. That premise was recognized, as noted above, by this Court in *Neibauer.* Therefore, the trial court improperly refused to allow introduction of evidence of MacQueen's employment for the single reason that it would have revealed that the Stenseths had insurance coverage. Such automatic exclusion was error. The trial court should have acknowledged that the

evidence fit into one of the exceptions un- der Rule 411, recognized its potential ad- missibility, and then conducted the balanc- ing test under Rule 403. The trial judge is afforded great deference when weighing the admissibility of evidence under Rule 403, but the record provided us on appeal does not disclose that such a process oc- curred in this case."

*Filloon* at 355.

The trial court in this case carefully con- sidered and addressed Rules 403 and 411 and our decision in *Filloon*. The court concluded the probative value of the evidence of Smith's employment was outweighed by its prejudi- cial nature.

■ Rule 403 vests wide discretion in the trial court to control the introduction of evi- dence. Rule 403, N.D.R.Evid., Explanatory Note; *Williams County Social Services Board v. Falcon*, 367 N.W.2d 170, 177 (N.D. 1985). The trial court's determination of ad- missibility under Rule 403 is entitled to great deference, and we will only reverse on appeal when the court has abused its discretion. *Filloon* at 355; *Falcon* at 177.

■ The Lachers argue evidence of Smith's employment by the Andersons' liabil- ity insurer was relevant to show his bias and prejudice in taking Joan's statement. How- ever, the circumstances in this case do not show that Smith's credibility, and accordingly his bias and prejudice, was ever placed in issue. Smith tape-recorded a statement by Joan about her version of the accident, and this statement was transcribed by a secre- tary. Joan was impeached at trial with the transcribed statement. Joan does not assert the statement was erroneously transcribed, nor does she deny making the statements attributed to her. Rather, Joan asserts, upon recollection, she was mistaken in some particulars when she made the statement to Smith in the hospital. Specifically, she now disputes part of the statement where she said she had been in the Andersons' house "at least a dozen times" before the accident.

Smith's credibility is wholly immaterial to Joan's claim, upon recollection, she was mis- taken. Smith's credibility, bias, and preju- dice would only be relevant if Joan claimed

she did not make the statements attributed to her or other relevant statements she made were excluded. In a markedly similar case, *Foulk v. Kotz*, 138 Ariz. 159, 673 P.2d 799, 801 (Ct.App.1983), the court held that where the witness does not deny giving the informa- tion in the statement but only asserts he was mistaken at the time, "the credibility issue is only imaginary—it does not exist." We con- clude when the witness does not dispute making the prior statement, the statement- taker's connection with an insurer is irrele- vant. *See Foulk*, 673 P.2d at 801; *Brown v. Edwards*, 258 F.Supp. 696, 699–700 (E.D.Pa. 1966).

Furthermore, Rule 411 allows evidence of liability insurance only to show bias or preju- dice of a *witness*. Smith did not testify before the jury, and his credibility was not placed in issue regarding the accuracy of the transcribed statement. The transcribed statement was admitted without an objection to foundation. The Lachers objected only to the trial court's refusal to permit them to show Smith's connection to the Andersons' insurer. We also note the Lachers adopted the transcribed statement when, in response to an interrogatory asking for their version of the accident, they responded: "This is covered in statements already made to ad- justers for the insurance company represent- ing the defendant in this matter." The March 11 transcribed statement was the only statement the Lachers ever gave to the ad- juster.

Evidence of Smith's employment was whol- ly irrelevant, other than as an attempt to improperly interject the issue of insurance into the trial. We conclude the trial court did not abuse its discretion in determining the probative value of this evidence was out- weighed by its unfair prejudicial effect.

The Lachers assert, notwithstanding *Fil- loon* and Rules 403 and 411, there is a "uni- versal rule" that when a witness is im- peached with a written statement, it is not improper to show the statement was made to a representative of an insurance company. *See* 98 C.J.S. *Witnesses* § 422 (1957). In support of their argument, the Lachers cite cases from other jurisdictions and other sec- ondary authorities which all pre-date the cur-

rent rules of evidence. Those cases are distinguishable because they involve written statements prepared by the insurance adjusters, not verbatim transcriptions of the witnesses' statements, and in each case the witness disputed making portions of the statements attributed to them or otherwise challenged their accuracy. *See Gegan v. Kemp,* 302 Mich. 218, 4 N.W.2d 525 (1942); *Rosenberg v. Mageda,* 251 Mich. 696, 232 N.W. 397 (1930); *Jankowski v. Clausen,* 167 Minn. 437, 209 N.W. 317 (1926); *Gleason v. Baack,* 137 Neb. 272, 289 N.W. 349 (1939); *Long v. Crystal Refrigerator Co.,* 134 Neb. 44, 277 N.W. 830 (1938). Furthermore, our research indicates the "rule" is far from "universal." *See, e.g., Brown* at 699–700; *Foulk,* 673 P.2d at 801; *Dunaway v. Darnell,* 302 S.W.2d 122, 124 (Ky.1957); *Hopper v. Comfort Coal–Lumber Co.,* 276 A.D. 1014, 95 N.Y.S.2d 318, 319 (1950); *Ivie v. Richardson,* 9 Utah 2d 5, 336 P.2d 781, 786–787 (1959). In any event, *Filloon* establishes admissibility of this type of evidence is now governed by Rules 403 and 411, N.D.R.Evid.

The Lachers also argue reversal is required by *Stygles v. Ellis,* 80 S.D. 346, 123 N.W.2d 348 (1963). *Stygles,* however, presents the classic case in which the accuracy of the prior statement is disputed by the witness and the credibility, bias, and prejudice of the insurance adjuster are placed directly in issue. The insurance adjuster had taken a written statement from an eyewitness to an accident. Upon reviewing the statement, the witness instructed the adjuster to make certain changes. The adjuster apparently failed to make the changes, and a dispute arose at trial over the accuracy of the written statement.

In *Stygles,* the credibility of the adjuster was directly placed in issue by the dispute over the accuracy of the statement. Under those circumstances, the court held the opposing party was entitled to show bias and prejudice, including his employment by an interested insurer. *See Stygles,* 123 N.W.2d at 353–354. *Stygles* is distinguishable. In this case, Joan does not claim she did not make the statements attributed to her, nor does she challenge the accuracy of the transcription. Accordingly, the adjuster's credibility is not in issue, and evidence of his bias and prejudice is irrelevant.

The trial court did not err in refusing to admit evidence of Smith's connection to the Andersons' insurance company.

## III

The Lachers assert the trial court erroneously allowed Larry Farris, the Williston City Building Inspector, to testify the Andersons' house was built in compliance with the building code in effect in 1977. Farris was asked whether the house was built "pursuant to" the code. The parties dispute whether "pursuant to" means "in compliance with." The Andersons assert the question was only meant to clarify which building code was in effect when the house was built.

As the transcript indicates, however, not only did the court and counsel clarify that the question only related to which code was in effect, but Lachers' counsel waived his objection:

"Q. Now, their house was built apparently pursuant to the BOCA Code which was in effect at that time, correct?

"A. Right.

"MR. CHAPMAN: Just a moment. We object to that. There is no basis for this witness to say that it was built in compliance with a BOCA Code. The BOCA Code is not in evidence. And this witness was not here then.

"Object on the ground of foundation.

"THE COURT: The question related to what code was in effect at the time, is that it?

"MR. SNYDER: I asked him—I believe he has already testified that the code in effect at that time was a BOCA Code.

"THE COURT: Uh-huh.

"MR. SNYDER: That is just what I asked now again, I guess. I don't have to ask it again.

"THE COURT: That is what I thought. You may have been anticipating—

"MR. CHAPMAN: I don't think, if we read it back, I think he was asking if it was apparently in compliance with the code.

But if that is what he said, he asked that, that is fine."

Counsel's statement—"if that is what he said, he asked that, that is fine"—constituted a waiver of his prior objection.

## IV

■ The Lachers argue the trial court abused its discretion in allowing the Andersons to recover as costs the expenses of discovery depositions.

Section 28–26–06(2), N.D.C.C., provides for taxation of deposition expenses to the prevailing party:

"In all actions and special proceedings, the clerk shall tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

&ast; &ast; &ast; &ast; &ast; &ast;

"2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;"

The allowance of disbursements under Section 28–26–06 lies within the sound discretion of the trial court and will be overturned on appeal only if an abuse of discretion is shown. *In re Estate of Dittus*, 497 N.W.2d 415, 420 (N.D.1993). The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Dittus* at 420.

■ The dispute in this case centers upon the parties' differing interpretations of the phrase "used or obtained for use on the trial" in Section 28–26–06(2). The Lachers contend that language authorizes recovery of deposition expenses only if the deposition is introduced at trial. The Andersons contend the language "used or obtained for use on the trial" has a broader meaning, including "discovery" depositions.

We recently endorsed an expansive reading of this statutory language in *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445 (N.D.1994). The non-prevailing party in *Fleck* argued that, because the case had been dismissed on a motion for summary judgment, the court could not allow as costs deposition expenses because there had been no "trial" in accordance with Section 28–26–06(2). We rejected that argument, ruling the statute permits recovery of expenses, even if no trial is held, if the deposition was obtained with the intent to use it at trial.

Similarly, we believe the Legislature, in authorizing recovery of expenses for depositions "used or obtained for use on the trial," did not thereby intend to limit those expenses to depositions actually introduced into evidence at trial. The word "used" has a broader connotation. When a party takes a "discovery" deposition, there may be many possible intended "uses" at trial. For example, it may be used to impeach the witness without being introduced in toto, if the witness unexpectedly makes an inconsistent statement at trial.

The Lachers voice concerns about the increasing costs of litigation, raising the specter of insurance defense attorneys running up costs with excessive discovery. The statute protects against abuse, however, by allowing only "necessary" expenses for depositions "necessarily" used or intended for use at trial. *See* N.D.C.C. § 28–26–06(2). Furthermore, the trial court is given broad discretion over allowance of such costs, and thus may further protect against abusive or needless expenses. Rather than adopt a broad, general rule disallowing costs for "discovery" depositions in all cases, we believe it is preferable to allow the trial court, which is in a far better position to assess these matters because it is involved in the action from its inception, to exercise its discretion on a case-by-case basis to prevent discovery abuses and excessive costs. *See Keller v. Vermeer Manufacturing Co.*, 360 N.W.2d 502, 508 (N.D.1984).

The trial court did not abuse its discretion in its allowance of disbursements, including deposition expenses, to the Andersons.

## V

The remaining issues raised by the Lachers have either been waived or their resolution would not affect the outcome. The judgment of the district court is affirmed.

VANDE WALLE, C.J., and MESCHKE, LEVINE and NEUMANN, JJ., concur.