J.W. BEAVERS, Jr., as Trustee of the William Herbert Hunt Trust Estate, Plaintiff and Appellee,

v.

William D. WALTERS, Sr.; Imperial Oil of North Dakota, Inc., a corporation, Defendants and Appellants,

and

Marvin L. Kaiser; Russell L. Kiker, Jr.; Defendants and Appellees,

and

Target Energies, Inc.; an unnamed joint venture or enterprise consisting of William D. Walters, Sr., Marvin L. Kaiser, Russell L. Kiker, Jr., and possible other unknown persons; and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the herein referred mineral estate, Defendants,

Russell L. KIKER, Jr. and Marvin L. Kaiser, Plaintiffs,

v.

William D. WALTERS, Sr.; and Imperial Oil of North Dakota, Inc., a corporation, Defendants.

Civ. No. 940131.

Supreme Court of North Dakota.

Sept. 11, 1995.

Charles S. Miller, Jr., of Fleck, Mather & Strutz, Bismarck, for plaintiff and appellee J.W. Beavers, Jr., Trustee of the William Herbert Hunt Trust Estate.

Mark L. Stenehjem, of Winkjer McKennett Stenehjem Reierson & Forsberg, Williston, for defendant and appellant Imperial Oil of North Dakota, Inc., and Fred E. Whisenand (appearance), of McIntee & Whisenand, PC, Williston, for defendant and appellant William D. Walters, Sr.

Kermit Edward Bye, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for

defendant and appellee Russell L. Kiker, Jr. Appearance by Steven A. Johnson, Fargo.

SANDSTROM, Justice.

Imperial Oil of North Dakota and William D. Walters, Sr., have appealed a district court order denying their motion for judgment notwithstanding the verdict or to alter and amend the judgment and from the amended judgment ordering them to pay the William Herbert Hunt Trust Estate (Hunt Trust) $984,020.61, and to pay Russell L. Kiker, Jr., and Marvin L. Kaiser $549,630.60. We affirm.

I

In 1976, Kiker, Kaiser, Walters, and Duane Peterson secretly formed a group to invest in oil and gas interests. Walters was the leader and coordinator. Purchases were to be made in Kiker's name and profits split according to each member's capital contribution.

On January 13, 1977, Kiker, on behalf of himself, Kaiser and Walters, purchased 20 mineral acres in Dunn County from Pete and Lillian Glovatsky, and, on the same day, leased them to Target Energies, Inc., a corporation solely owned by Kaiser, and recorded the mineral deed and lease. After oil development began in 1979, Kiker distributed 37.5 percent of the oil proceeds of the Glovatsky minerals to himself, 37.5 percent to Imperial Oil (Walters' assignee), and 25 percent to Kaiser. Kiker, Kaiser, and Walters each received one-third of the proceeds of the Target lease of the Glovatsky minerals.

Shortly after the Target lease of the Glovatsky minerals was recorded, Hunt Trust sued Kiker and Target to establish the priority of its 1972 Glovatsky lease, which had been recorded in McKenzie County, but, through inadvertence, had not been recorded in Dunn County. Because of false testimony by Kaiser, Kiker's knowledge of the Hunt Trust lease was not imputed to Target and Kaiser, *Disciplinary Bd. v. Kaiser*, 484 N.W.2d 102 (N.D.1992), resulting in a holding that the Target lease was not subject to the Hunt Trust lease, *Hunt Trust Estate v. Kiker*, 269 N.W.2d 377 (N.D.1978).

In his October 1988 divorce trial, Kaiser admitted testifying falsely in the 1977 Hunt Trust trial. In December 1988, Kiker and Kaiser settled with Hunt Trust by each paying $305,500 and transferring their interests in the Target lease and the Glovatsky minerals to Hunt Trust.

In 1989, Hunt Trust sued Walters, Imperial Oil, Target, Kaiser and Kiker for damages and a quieting of title. Based upon a 1976 farmout agreement between Hunt Trust and Gulf Oil Corporation (Gulf), Gulf's successor, Chevron, U.S.A., Inc., joined in the action, suing Kiker, Kaiser, Walters, Imperial Oil and the Hunt Trust for damages. In April 1992, Kiker and Kaiser paid Chevron $850,-000 for dismissal of Chevron's claims against them and for an assignment of Chevron's claims against Walters and Imperial.

Kiker and Kaiser's cross-claims against Hunt Trust were severed for separate trial. The jury found in favor of Kiker and Kaiser for $305,500. The trial court added attorney fees, and costs and disbursements, and judgment was entered for a total of $377,242.14. We affirmed the damage award and the costs and disbursements, but reversed the attorney fee award in *Beavers v. Walters*, 537 N.W.2d 653 (N.D.1995), which contains a more complete recitation of the factual and procedural background of this case.

Upon trial of the main action, the jury returned a verdict for Hunt Trust and for Kiker and Kaiser, as assignees of Chevron's claim, in an amount representing the total working interest income lost as a result of the Target lease being held superior to the Hunt Trust lease of the 20 Glovatsky mineral acres. Judgment was entered ordering that Hunt Trust recover $984,020.61 from Walters and Imperial Oil, and that Kiker and Kaiser, as assignees of Chevron, recover $549,630.60 from Walters and Imperial Oil. Walters and Imperial Oil appealed those parts of the judgment.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 2, N.D. Const., and N.D.C.C. § 28–27–01. The appeal was timely under Rule 4(a), N.D.R.App.P.

## II

Walters and Imperial Oil contend the trial court erred in prohibiting them from presenting evidence in support of their statute of limitations defense. Receiving and retaining royalties known to belong to another is a continuing tort. *Young v. Young*, 709 P.2d 1254 (Wyo.1985). The statute of limitations for a continuing tort does not begin to run until the tortious acts cease. *See O'Fallon v. Pollard*, 427 N.W.2d 809 (N.D.1988); 54 C.J.S. *Limitation of Actions* § 177 (1987). Actions based on fraud must begin within six years after the claim for relief accrued upon the aggrieved party's discovery of the facts constituting the fraud. *Westerso v. Rustad*, 517 N.W.2d 404 (N.D.1994). "[A] cause of action, or claim for relief does not accrue until the aggrieved party discovers the facts which constitute the basis for its cause of action or claim for relief." *Hebron Pub. Sch. Dist. No. 13 v. United States Gypsum Co.*, 475 N.W.2d 120, 126 (N.D.1991). Ordinarily, a plaintiff's knowledge is a question of fact. *Biesterfeld v. Asbestos Corp. of America*, 467 N.W.2d 730 (N.D.1991). "[T]he issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion." *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986).

Walters and Imperial Oil contended at trial that Hunt Trust and Gulf should have known of Kaiser's perjury long before Kaiser's disclosure of it in 1988. Walters and Imperial Oil offered evidence of deeds (outside the Glovatsky chain of title) between Kiker and Kaiser to show there was a relationship between them different than they testified to in the 1977 Hunt Trust trial; evidence Gulf and Hunt Trust had the same legal counsel in 1977; evidence in a 1977 deposition, Kaiser said he had known Kiker for twelve years, he worked as a ranch hand for Kiker for five summers, he began doing legal work for Kiker in 1971, and Kiker had invested in Target two years before the Glovatsky lease; evidence Hunt Trust could have discovered by searching the records of properties adjacent to Glovatsky; a division order issued by Gulf in 1977 showed Kiker, Kaiser and Walters as three of seven mineral owners of one property; evidence William Herbert Hunt later said he "knew" Kiker

and Kaiser "were lying back when it happened;" and evidence Hunt's attorney was suspicious of their testimony. The proffered evidence was insufficient as a matter of law to show knowledge on the part of Hunt Trust or Gulf that Kaiser lied about his relationship with Kiker in the 1977 Hunt Trust trial. A suspicion or intuitive sense that Kaiser lied is not the discovery of "facts which constitute the basis for [a] cause of action or claim for relief." *Hebron Pub. Sch. Dist. No. 13 v. United States Gypsum Co.* at 126. The trial court did not err with regard to the statute of limitations defense. The claims were not barred by the statute of limitations.

Walters and Imperial Oil made an additional argument with regard to Chevron: "Chevron knew by August 21, 1989 that it had a potential claim, and was aware of the facts on which its claim is based as early as the fall of 1988, yet did not bring its action until September 12, 1990.... The relevant 'discovery rule' statute clearly provides that a plaintiff who is ignorant of his claim due to fraudulent concealment 'may commence an action within one year from the time the cause of action is discovered by him or might have been discovered by him in the exercise of diligence ...' N.D.CENT.CODE § 28–01–24 (1991) (emphasis added). Chevron waited two years."

This Court has held N.D.C.C. § 28–01–24, applies only when an action is otherwise barred by the passage of time. *Phoenix Assurance Co. v. Runck*, 366 N.W.2d 788 (N.D.1985). Thus, N.D.C.C. § 28–01–24, does not apply to this case.

## III

Walters and Imperial Oil contend the trial court erred in refusing to dismiss the claims of Kiker and Kaiser on the ground they were unlawfully attempting to profit from their own wrongdoing through the assignment from Chevron.

Walters and Imperial Oil contend Kiker and Kaiser cannot recover under their assignment from Chevron because N.D.C.C. § 31–11–05(8), provides: "No one can take advantage of his own wrong." This Court has relied on that maxim in decisions holding a wrongdoer may not take advantage of his

own wrong against the victim of his wrongdoing. *See, e.g., Lizakowski v. Lizakowski,* 307 N.W.2d 567 (N.D.1981); *Ley v. First Nat'l Bank,* 55 N.D. 227, 212 N.W. 841 (1927). The maxim is part of the "clean hands" doctrine of equity. 27 Am.Jur.2d *Equity* § 137 (1966). A defendant who has profited from the wrongdoing (as have Walters and Imperial Oil) is in no position to invoke the maxim. *Id.* § 144. A perpetrator of the same wrong will get no relief. *Id.* § 138. One who purges himself of his wrongdoing will have his right to relief restored. *Id.* § 143.

■■■ We are not persuaded that N.D.C.C. § 31–11–05(8), precludes recovery by Kiker and Kaiser. Walters and Imperial Oil were not victims of the wrongdoing of Kiker and Kaiser; they were participants in the wrongdoing. Walters was the leader of the group. Walters and Imperial Oil profited from the wrongdoing. The judgment against Walters and Imperial Oil is based on their own wrongdoing. Kiker and Kaiser purged themselves of their wrongdoing and made amends with Hunt Trust and Chevron. Walters refused to take part in settling with Hunt Trust.

If we were to accept the arguments of Walters and Imperial Oil, wrongdoers who purge themselves of their wrongdoing and make amends with the victims of their wrongdoing would be entitled to no relief against a co-participant in the wrongdoing who refused to purge himself of his wrongdoing and who would be allowed to retain the profits he received from the wrongful conduct. Wrongdoers should be encouraged to settle with their victims; stonewalling should be discouraged.

■■■ Walters and Imperial Oil contend the assignment to Kiker and Kaiser of Chevron's claim against Walters and Imperial Oil is a subterfuge to evade N.D.C.C. § 32–38–01(3), which provides: "There is no right of contribution in favor of any tort-feasor who has intentionally (willfully or wantonly) caused or contributed to the injury or wrongful death." The claim assigned by Chevron to Kiker and Kaiser was for harm done by Walters and Imperial Oil. The jury found that Walters and Imperial Oil "caused damages to Chevron U.S.A. as those claims are assigned to Russell L. Kiker, Jr. and Marvin L. Kaiser." Thus, the jury verdict was based on the acts of Walters and Imperial Oil, not on a right of contribution.

The trial court did not err in refusing to dismiss the claims of Kiker and Kaiser on the ground that they were attempting to profit from their own wrongdoing.

## IV

Walters and Imperial Oil contend the trial court erred in excluding the following evidence: (1) Kaiser's parents, who owned a shoe store, gave him investment cash which they transported in Dr. Scholl's insole boxes; (2) this Court's opinion disciplining Kaiser, a lawyer; (3) Kiker has special boots containing a compartment for hiding cash; (4) Kiker had foreign bank accounts; (5) a settlement proposal Kaiser made in his divorce proceeding; and (6) a legal memorandum Kaiser submitted to this Court's Disciplinary Board.

■■■ Rule 403, N.D.R.Ev., gives the trial court wide discretion to control the introduction of evidence. *Lacher v. Anderson,* 526 N.W.2d 108 (N.D.1994). The trial court's determinations under Rule 403 are entitled to great deference and we will reverse on appeal only when the trial court has abused its discretion. *Lacher.* We conclude from our review the trial court did not abuse its discretion in excluding the evidence sought to be introduced by Walters and Imperial Oil.

## V

When Chevron joined in the action and sued Kiker, Kaiser, Walters, Imperial Oil, and Hunt Trust for damages, Kiker and Kaiser cross-claimed against Hunt Trust for indemnity if Hunt Trust did not own all the claims against them when they settled with Hunt Trust for $305,500 each. Those cross-claims were severed for separate trial. The jury found Hunt Trust, in settling with Kiker and Kaiser, had warranted that Hunt Trust owned all claims against Kiker and Kaiser, and found Hunt Trust breached that warranty, resulting in damages of $305,500 to Kiker and Kaiser. Judgment was entered for that amount, plus costs, disbursements, and attorney fees. We affirmed the damage award and the costs and disbursements, but reversed the attorney fee award in *Beavers v. Walters,* 537 N.W.2d 653 (N.D.1995).

Walters and Imperial Oil contend the trial court violated their constitutional rights to due process and a jury trial by increasing Hunt Trust's judgment against them by $305,500 based on the $305,500 awarded Kiker and Kaiser in their cross-claim against Hunt Trust. Walters and Imperial Oil contend they were not parties to the settlement between Kiker, Kaiser, and Hunt Trust or to the cross-claims severed for separate trial, and had no opportunity to protect their interests. Walters and Imperial Oil were parties to the action. Kiker and Kaiser's cross-claims were not severed from the action; they were only tried separately. Although Walters and Imperial Oil knew the cross-claims were going to be tried separately and knew the issues involved, they did not participate in that trial or seek to participate in that trial.[1]

■■■ "The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment." *State v. Haakenson*, 213 N.W.2d 394, 399 (N.D. 1973) (overruled on other grounds, *State v. Himmerick*, 499 N.W.2d 568, 571 (N.D. 1993)). For an effective appeal on an issue, the issue must first have been "appropriately raised in the trial court so that the trial court could have ruled upon it ... otherwise, it would behoove a defendant to sit by and invite error in the hope that if he did not prevail the first time, he would prevail upon appellate review of invited error." *State v. Moore*, 286 N.W.2d 274, 283 (N.D.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980). Walters and Imperial Oil did not seek to participate in the trial on Kiker and Kaiser's cross-claims. Thus, the matter was not appropriately raised in the trial court so the trial court could intelligent-

ly rule on it, and the issue has not been preserved for appellate review.

## VI

The judgment is affirmed.

RALPH J. ERICKSTAD and GORDON O. HOBERG, Surrogate Judges, and MICHAEL O. McGUIRE, District Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, MICHAEL O. McGUIRE, District Judge, and GORDON O. HOBERG, Surrogate Judge, sitting in place of LEVINE, MESCHKE and NEUMANN, JJ., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

I concur with part I, II, IV and V of the majority opinion. I write separately with regard to Part III.

The majority considers the maxim that no one can take advantage of his or her own wrong, section 31–11–05(8), NDCC, but rejects its application to these facts. Perhaps the better maxim for the Court to apply is that found at section 31–11–05(15), NDCC, i.e., "[b]etween those who are ... equally in the wrong the law does not interpose." That maxim is also stated as "[w]here the fault is mutual, the law will leave the case as it finds it" or "[i]n a case of equal or mutual fault ... the condition of the party ... defending is the better one." *See* definition of "In pari delicto potior est conditio defendentis", Black's Law Dictionary 6th Ed.

Or, as the Court applied it in *Red River Valley Land Co. v. Harris*, 42 N.D. 76, 172 N.W. 68, 69 (1919), "[h]ence it is that neither party has any remedy or cause of action against the other. Between those who are equally in wrong, the law does not interfere." Thus, as between Kiker and Kaiser as plaintiffs and Walters and Imperial Oil as defen-

1. In ruling on posttrial motions, the trial court stated:

"As stated by the plaintiff, the Hunt Trust Estate, the liability of Walters and Imperial is joint and several for the entire amount of the judgment. Section 32–38–04(1) of the North Dakota Century Code mandates that the claim against Walters and Imperial should be reduced by the greater of the amount stipulated by the release granted to Kiker and Kaiser or the amount of consideration paid for such release. All parties agreed that the offset would be determined by the Court. Since Kiker and Kaiser's verdict resulted in them receiving a return of one half of what they paid, the Trust Estate in effect only received $305,500 from Kiker and Kaiser which the Court believes is the correct amount of the offset."

dants, the law would leave the case where it finds it and would not aid Kiker and Kaiser in their attempt to recover from Walters and Imperial Oil.

This maxim is also closely related to the "clean hands" maxim. *See* 27 Am.Jur.2d *Equity* § 141 (1966). The rule is applied between parties to a fraudulent or illegal transaction and this case certainly fits that description. Although there are contentions by Kaiser that his fault is not as great as Walters, *see Disciplinary Action Against Kaiser,* 484 N.W.2d 102 (N.D.1992), that contention remains to me an allegation not yet determined. Without question there is enough duplicity in the facts to inculpate all three, Kaiser, Kiker, and Walters. Notwithstanding it is difficult for me to find any difference in the degree of fault, particularly when Kaiser, as an attorney, is held to a higher standard, the only method to determine whether that fault weighs equally would be to remand for yet another trial in this sordid relationship. But these parties have caused the judicial system enough trouble and the taxpayers of this State enough money as a result of their duplicity.

Furthermore, as noted in 27 Am.Jur.2d, *supra,* at page 677, although the principle of the maxim is that to give Kiker and Kaiser relief would contravene public morals and impair the good of society, the maxim should not be applied if to withhold relief would, to a greater extent, offend public morals. That is a close call here.

The majority notes that wrongdoers should be encouraged to settle with their victims. I agree. I am skeptical that Kiker and Kaiser's purpose for settling was altruistic or that it would have occurred at all without the assignment of Chevron's claim and the plot to recover their settlement costs by laying all the blame on Walters and Imperial Oil. Nevertheless, from the standpoint of the victims, payment is beneficial regardless of the motive of the wrongdoer.

There is a cost to the public in permitting mutual wrongdoers to recover one from the other by the use of the judicial system. I am reluctant to condone the use of the courts to aid them in their recovery. But I realize that we should encourage restitution to victims by wrongdoers and that restitution may not have been made but for the possibility of recovery from another wrongdoer and leniency or a recommendation of the leniency as attorney disciplinary proceedings. *See Disciplinary Action Against Kaiser, supra.* Furthermore, as the majority notes, this precedent may encourage future wrongdoers such as Walters to make restitution.

I reluctantly concur in the result reached by the majority opinion.

VANDE WALLE, C.J., RALPH J. ERICKSTAD, Surrogate Judge, and MICHAEL O. McGUIRE, District Judge, concur.