**J.W. BEAVERS, Jr., as Trustee of the William Herbert Hunt Trust Estate, Plaintiff and Appellant,**

v.

**Marvin L. KAISER and Russell L. Kiker, Jr., Defendants and Appellees,**

**and**

**William D. Walters, Sr.; Imperial Oil of North Dakota, Inc., a corporation; Target Energies, Inc.; an unnamed joint venture or enterprise consisting of William D. Walters, Sr., Marvin L. Kaiser, Russell L. Kiker, Jr., and possible other unknown persons; and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the herein referred mineral estate, Defendants,**

**and**

**Russell L. KIKER, Jr. and Marvin L. Kaiser, Plaintiffs,**

v.

**William D. WALTERS, Sr.; and Imperial Oil of North Dakota, Inc., a corporation, Defendants.**

**Civ. No. 940154.**

Supreme Court of North Dakota.

Sept. 11, 1995.

Charles S. Miller, Jr., of Fleck, Mather & Strutz, Bismarck, for plaintiff and appellant. Appearance by Craig C. Smith, Bismarck.

Steven A. Johnson, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, and Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiffs. Appear-

ance by Kermit E. Bye and Maureen Holman, Fargo.

SANDSTROM, Justice.

J.W. Beavers, Jr., as Trustee of William Herbert Hunt Trust Estate (Hunt Trust), appealed from that part of a district court judgment ordering that Russell L. Kiker, Jr., and Marvin L. Kaiser recover damages of $305,500, attorney fees of $70,162.61, and costs and disbursements of $1,579.53, for a total judgment of $377,242.14. We affirm the damage award and the costs and disbursements, reverse the attorney fee award, and remand for entry of an amended judgment.

I

In 1976, Kiker, Kaiser, William D. Walters, Sr., and Duane Peterson secretly formed a group to invest in oil and gas interests. Walters was the leader and coordinator. Purchases were to be made in Kiker's name and the profits split according to each member's capital contribution.

On January 13, 1977, Kiker, on behalf of himself, Kaiser, and Walters, purchased 20 mineral acres in Dunn County from Pete and Lillian Glovatsky, and, on the same day, leased them to Target Energies, Inc., a corporation solely owned by Kaiser, and recorded the mineral deed and the lease. After oil development began in 1979, Kiker distributed oil proceeds from the Glovatsky minerals: 37.5 percent to himself, 37.5 percent to Imperial Oil of North Dakota (Walters' assignee), and 25 percent to Kaiser. Kiker, Kaiser, and Walters each received one-third of the proceeds from the Target lease of the Glovatsky minerals.

Shortly after the Target lease of the Glovatsky minerals was recorded, the Hunt Trust sued Kiker and Target to establish the priority of its 1972 Glovatsky lease, which had been recorded in McKenzie County, but, through inadvertence, had not been recorded in Dunn County. "The litigated question was whether Kiker and Target acquired their interests in the Glovatsky property without notice of the Hunt Trust's lease." *Disciplinary Bd. v. Kaiser*, 484 N.W.2d 102, 102–03 (N.D.1992). At trial in June 1977, Kaiser falsely testified that he had never been a partner with Kiker and had never entered into a joint venture with Kiker. "Had Kaiser testified truthfully, Kiker's knowledge of the Hunt Trust's lease would have been imputed to Kaiser and Target as partners." *Id.* at 103. The trial court held that the Hunt Trust lease was subordinate. On appeal, this Court concluded:

"We hold that Target is a good faith purchaser for value without notice of the prior oil and gas lease executed between Hunt and the Glovatskys on the NW¼ of Section 19 and that Target's lease is not subject to Hunt's lease."

*Hunt Trust Estate v. Kiker*, 269 N.W.2d 377, 385 (N.D.1978). "Kaiser's false testimony tipped the scales of justice in favor of himself and his secret partners." *Disciplinary Bd. v. Kaiser* at 103.

In 1981, Kaiser disclosed his perjury to his wife, Lillian Walters Kaiser. In his October 1988 divorce trial, Kaiser admitted testifying falsely in the 1977 Hunt Trust trial. On December 29, 1988, Kiker and Kaiser settled with the Hunt Trust by each paying $305,500, transferring their interests in the Target lease and the Glovatsky minerals to the Hunt Trust, and agreeing to "fully cooperate with the Trust Estate and provide truthful and accurate testimony in assisting the Trust Estate as it asserts its claim against Walters."

In 1989, Hunt Trust sued Walters, Imperial Oil of North Dakota, Target Energies, Inc., Kaiser, Kiker, and others, for damages, punitive damages, and a quieting of title as to any adverse claims of the defendants. In May 1991, Chevron, U.S.A., Inc., successor in interest to all rights of Gulf Oil Corporation, joined in the action, suing Kiker, Kaiser, Walters, Imperial Oil, and Hunt Trust for damages. Chevron alleged that Gulf and Hunt Trust executed a farmout agreement on December 1, 1976, covering the Glovatsky minerals leased by Hunt Trust; that Kaiser's false testimony in the 1977 trial and the wrongful acts of Kiker, Kaiser, Walters, and Imperial Oil caused them to share the income from the Target Lease, to Chevron's detriment; that the Hunt Trust lease was assigned to Gulf in 1979; that in settling with Kiker and Kaiser, Hunt Trust had no author-

ity to settle any claims on behalf of Gulf or Chevron; and that "Kaiser, Kiker, Walters, the joint venture and Imperial Oil have shared in the proceeds from the Target Lease and minerals in the amount of $1,664,-368, or an amount proved at trial, which has wrongfully diminished Gulf and Chevron's interest by 50% of this amount;" and that Chevron did not become aware of the perjury until 1989.

Hunt Trust counterclaimed against Chevron, seeking a decree that Chevron has no interest in 12.5 net mineral acres of the 20 Glovatsky mineral acres or any leasehold interest burdening the Glovatsky minerals. Walters and Imperial Oil answered Chevron's complaint and cross-claimed against Kiker and Kaiser. Kaiser answered Chevron's complaint and cross-claimed against Hunt Trust, alleging that in settling with Kaiser, Hunt Trust represented that it owned any claim against Kaiser arising out of the Glovatsky minerals and Kaiser's testimony in the Hunt Trust trial, and that "If Hunt did not own all claims against Kaiser arising from the above described events, and if Plaintiff Chevron should prevail in its claim against Kaiser, Kaiser is entitled to indemnity for the same from Hunt." Kaiser also cross-claimed against Walters for contribution. Kiker answered Chevron's complaint and cross-claimed against Hunt Trust for indemnity if it did not own all claims against Kiker, and cross-claimed against Walters and Imperial Oil for contribution.

Kiker, Kaiser, and Hunt Trust moved for summary judgment dismissing Chevron's action, alleging that the wrongful acts by Kiker, Kaiser, and Walters were done before Chevron had any interest in the property, and the claims were barred by the statute of limitations. The trial court held that Gulf's acceptance by performance of a December 1, 1976, option farmout agreement related back to the date the option was given, so it had an interest in the property, and Chevron's action was not barred by any statute of limitation.

In April 1992, Kiker and Kaiser paid Chevron $850,000 for dismissal of Chevron's claims against them and for an assignment of Chevron's claims against Walters and Imperial.

Kiker and Kaiser's cross-claims against Hunt Trust were severed from the main action for trial. The main action was tried in April 1993. The jury returned a verdict for Hunt Trust and for Kiker and Kaiser as assignees of Chevron's claim in equal amounts of $889,356.87, representing the total working interest income lost as a result of the Target lease being held superior to the Hunt Trust lease of the 20 Glovatsky mineral acres. Judgment was entered ordering that Hunt Trust recover $984,020.61 from Walters and Imperial Oil, and that Kiker and Kaiser, as assignees of Chevron, recover $549,630.60 from Walters and Imperial Oil.

In the separate trial on Kiker and Kaiser's cross-claims against Hunt Trust, the jury found in favor of Kiker and Kaiser for $305,-500. The court added attorney fees of $70,-162.61, costs and disbursements of $1,579.53, and judgment was entered for a total of $377,242.14. It is from this part of the judgment that Hunt Trust has appealed.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 2, N.D. Const., and N.D.C.C. § 28–27–01. The appeal was timely under Rule 4(a), N.D.R.App.P.

## II

■ Hunt Trust contends Chevron had no tort claims because the wrongful acts of Kiker, Kaiser, and Walters were perpetrated solely against Hunt Trust.

On December 1, 1976, Gulf and Hunt Trust entered into an option farmout agreement covering Hunt Trust's lease of the Glovatsky minerals. Gulf drilled option wells, thereby exercising the option and satisfying the farmout. Hunt Trust acknowledged in its brief:

"When Gulf commenced the drilling and completed the Glovatsky 1–24 well on June 24, 1977, Gulf effectively exercised its option and satisfied the conditions of the farmout, earning an equitable interest in the *drilling unit* for the Glovatsky 1–24 well.... Gulf then spud the Glovatsky 1–19 well in March, 1978, and completed the

well on May 5, 1978.... Gulf thus effectively exercised its second option, earning equitable title in the remaining acreage covered by the Hunt lease insofar as it covered the drilling unit of the Glovatsky 1–19 well (Section 19: NW¼). Upon Gulf receiving an assignment from the Trust as to the interest earned, Gulf then acquired 'legal' title to the Trust's leasehold interest in the drilling units."

Hunt Trust argues, however: "Thus, to summarize, at the time the fraudulent scheme deprived the Trust of its lease, Gulf had not exercised its option as to the NW¼ of the Section 19. The fraudulent acts, therefore, were committed solely against the Trust." Relying on *Horgan v. Russell*, 24 N.D. 490, 140 N.W. 99 (1913), the trial court held that with Gulf's acceptance of the option by performance of the work required of it, Gulf's rights related back to the date the option was given by Hunt Trust. Regardless of the target of the wrongful acts of Kiker, Kaiser, and Walters, it is clear that both Hunt Trust and Chevron were damaged by those acts. Hunt Trust does not dispute the assertion by Kiker and Kaiser "but for the wrongful conduct, Hunt would have only received one-half of the proceeds of the Target lease and Chevron would have received the other half." The trial court correctly concluded Chevron had a claim to proceeds of the Target Lease.

### III

■ Hunt Trust contends the trial court erred in not dismissing the warranty claim presented by Kiker and Kaiser. When they settled Hunt Trust's claims against Kiker and Kaiser, the parties executed a settlement agreement, one provision of which recited in part:

> "The Trust Estate represents that it is now the owner of any claim against Kiker and Kaiser arising from the events described and that its trustee has the authority to bind the Trust Estate to this agreement."

Kiker and Kaiser contended this was a warranty that Hunt Trust was the owner of all possible claims against Kiker and Kaiser arising out of their perjury and other wrongful acts.

Rational arguments can be made for different positions about the meaning of the contract provision in question. It is, therefore, ambiguous. *National Bank v. Int'l Harvester Co.*, 421 N.W.2d 799 (N.D.1988). "A determination of ambiguity is but the starting point in the search for the parties' ambiguously expressed intentions, which are questions of fact to be determined with the aid of extrinsic evidence." *Bohn v. Johnson*, 371 N.W.2d 781, 788 (N.D.1985). Thus, the trial court did not err in refusing to dismiss the warranty claim and properly submitted the question to the jury.

■ The jury found the provision in question was intended to be a warranty, was intended to cover the entire claim against Kiker and Kaiser, and was breached by Hunt Trust, resulting in damages of $305,500 to Kiker and Kaiser. We exercise a limited review of jury findings. Our review of fact questions tried to a jury is limited to determining if there is substantial evidence to support the verdict, we view the evidence in the light most favorable to the verdict, and "unless the verdict is so flagrantly against the weight of the evidence that it appears the jury was actuated by bias or prejudice, the verdict will not be set aside." *Dewey v. Lutz*, 462 N.W.2d 435, 439 (N.D.1990). There was substantial evidence to support the verdict in this case and we will not set it aside.

### IV

In light of our determination of the warranty issue, we need not determine Hunt Trust's contention that the trial court erred in not dismissing Kiker and Kaiser's claim of unintentional representation.

Hunt Trust contends the trial court erred in awarding $70,162.61 in attorney fees to Kiker and Kaiser as damages.

■ As Kiker and Kaiser have argued, "[i]n certain cases, attorneys' fees are recoverable as an item of damages." This Court has adopted a third-party exception to the general rule of not awarding attorney fees as an element of damages without contractual or statutory authority therefor:

"The formulation of the exception, relevant to the particular facts of this case, which we adopt occurs in Section 914 of 4 *Restatement of Torts* 2d, p. 492, and states:

"'(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.'"

*Blair v. Boulger*, 336 N.W.2d 337, 340 (N.D. 1983), *cert. denied*, 465 U.S. 1014, 104 S.Ct. 1018, 79 L.Ed.2d 247 (1984).

■ Kiker and Kaiser argue: "Attorneys' fees were properly awarded here because as a result of Hunt's ... breach of the settlement agreement, Kiker and Kaiser ... were forced to defend claims asserted by Chevron." We conclude Kiker and Kaiser did not incur attorney fees because, through Hunt Trust's tort, they were required to defend an action against Chevron. Kiker's and Kaiser's own wrongdoing caused them to incur attorney fees. By secretly forming a group to invest in oil and gas interests, purchasing in Kiker's name 20 mineral acres from Glovatskys, which Kiker knew to be leased to Hunt, and immediately leasing them to Target and recording the lease, then securing priority of the Target Lease over the Hunt Lease through false testimony in a judicial proceeding to determine the priority of the leases, Kiker and Kaiser set up a need to incur attorney fees in the future to defend their actions when their wrongful conduct came to light. In short, their own wrongdoing, not wrongdoing by Hunt Trust, caused Kiker and Kaiser to incur attorney fees. This does not fall within the rule of *Blair v. Boulger.* The trial court erred in awarding attorney fees to Kiker and Kaiser.

We have considered a number of other issues raised by Kiker and Kaiser. We consider them to be without merit, and no productive purpose would be served by addressing them.

V

That part of the judgment awarding Kiker and Kaiser damages of $305,500 and costs and disbursements of $1,579.53 is affirmed; that part of the judgment awarding attorney fees to Kiker and Kaiser is reversed; and the matter is remanded for entry of an amended judgment in accordance with this opinion.

VANDE WALLE, C.J., RALPH J. ERICKSTAD and GORDON O. HOBERG, Surrogate Judges, and MICHAEL O. McGUIRE, District Judge, concur.

RALPH J. ERICKSTAD and GORDON O. HOBERG, Surrogate Judges, and MICHAEL O. McGUIRE, District Judge, sitting in place of LEVINE, MESCHKE and NEUMANN, JJ., disqualified.