**Bruce ROEMMICH, Plaintiff,**

v.

**EAGLE EYE DEVELOPMENT, LLC; Leland Bertsch; Jane Bertsch; Janet Scholl; and Jon Wagner, Defendants.**

No. A1–04–79.

United States District Court, D. North Dakota, Southwestern Division.

Sept. 13, 2005.

Mark R. Hanson, Nilles Law Firm, Fargo, ND, for Plaintiff.

David Rodger Bliss, Olson Cichy Bliss, David Allan Tschider, Tschider & Smith, Bismarck, ND, for Defendants.

## ORDER ON SUMMARY JUDGMENT MOTIONS

HOVLAND, Chief Judge.

Before the Court are cross motions for summary judgment. On April 15, 2005, both parties filed Motions for Partial Summary Judgment. On June 15, 2005, the Defendants filed a second Motion for Summary Judgment. For the reasons set forth below, the Plaintiff's motion is granted, the Defendants' motion regarding the statute of limitations is granted in part, and the Defendants' second motion for summary judgment is denied.

## I. BACKGROUND

Eagle Eye Development, LLC (Eagle Eye) was organized on June 12, 1995, and certified by the North Dakota Secretary of State on June 13, 1995. Eagle Eye's principal place of business is located in Bismarck, North Dakota. The purpose of Eagle Eye was the building of post office facilities. Leland Bertsch was named initial governor and manager of Eagle Eye. Jane Bertsch, Leland's wife, was also named a governor. Leland Bertsch made a 95% capital contribution and received a 95% voting interest. Jane Bertsch made a 5% capital contribution and received a 5% voting interest.

On June 28, 1995, at a special meeting of the Eagle Eye board of governors, Jane Bertsch assigned "for value received" her 5% interest in Eagle Eye to her brother, Bruce Roemmich, the plaintiff in this action. Roemmich is a resident of Florida. Jane Bertsch resigned as secretary, treasurer and governor of Eagle Eye. On June 28, 1995, Leland Bertsch also assigned "for value received" a 25% ownership interest in Eagle Eye to Roemmich. Leland Bertsch was elected governor and president while Roemmich was elected as governor and secretary/treasurer. These transfers gave Roemmich a 30% ownership

interest and Leland Bertsch a 70% ownership interest in Eagle Eye.

The "value received" was to have been Roemmich's services in the development of two post office buildings in Florida. It is alleged that Roemmich walked off the job in Florida on or about June 7, 1996. At a special member meeting of Eagle Eye on June 24, 1996, Roemmich, who was not in attendance, was removed as governor by Leland Bertsch and replaced by Jane Bertsch. Another meeting of Eagle Eye was held the same day during which Roemmich, although not in attendance, was removed as treasurer and replaced by Jane Bertsch. Eagle Eye built three post offices, two in Florida and one in Minnesota. The construction projects were completed in September 1997.

Jon Wagner is the secretary of Eagle Eye. He acts as Eagle Eye's accountant and is married to Leland Bertsch's sister. Janet Scholl is Leland Bertsch's aunt. She worked for Bertsch Construction as office manager from 1992–1998. She had limited involvement with Eagle Eye.

The plaintiff, Bruce Roemmich filed this lawsuit on April 13, 2004. The action is for a corporate "freeze out." Four separate cause of action are alleged including: (1) unfairly prejudicial conduct towards a member, (2) breach of fiduciary duty and duty to act in good faith towards another member, (3) breach of fiduciary duties and duty to act in good faith by officers of a limited liability company, and (4) dissenters rights. The statutory basis for all four causes of action is found in Chapter 10–32 of the North Dakota Century Code, commonly referred to as the North Dakota Limited Liability Company Act. The Defendants filed a counterclaim for breach of contract and rescission on May 10, 2004.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

### A. STATUTE OF LIMITATIONS

The first two motions before the Court present issues as to whether the actions are barred by the applicable statute of limitations. As this is a diversity action, the Court will apply the substantive law of North Dakota. *Paracelsus Healthcare*

*Corp. v. Philips Med. Sys.*, 384 F.3d 492, 495 (8th Cir.2004).

The statute of limitations for a tort action in North Dakota is six years. N.D.C.C. § 28–01–16(5). An action for liability created by statute has a six-year statute of limitations. N.D.C.C. § 28–01–16(2). The statute of limitations for a breach of contract action is also six years. N.D.C.C. § 28–01–16(1); *Snortland v. State, Acting Through Its Agencies, North Dakota Department of Public Instruction,* 615 N.W.2d 574, 577 (N.D.2000). The same six-year statute of limitation applies in an action for rescission. N.D.C.C. § 28–01–16(1); *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 128 (N.D. 1990).

 It is well-established that the statute of limitations begins to run from when the action accrues. *Snortland,* 615 N.W.2d 574, 577. A claim accrues when the plaintiff "knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury." *Id.* For continuing torts, the statute of limitations does not accrue and begin to run until the tortious acts cease. *Beavers v. Walters,* 537 N.W.2d 647, 650 (N.D. 1995). A statute of limitations defense must be proved by showing the aggrieved party had knowledge of the facts which constitute the basis for the cause of action or claim and did not act within the prescribed time period.

### 1) ROEMMICH'S CAUSES OF ACTION

The complaint contains four separate causes of action which Roemmich describes as (1) unfairly prejudicial conduct towards a member, (2) breach of fiduciary duty and duty to act in good faith towards another member, (3) breach of fiduciary duties and duty to act in good faith by officers of the limited liability company, and (4) dissenters rights. Roemmich de-

scribes this action as a case of corporate "freeze out" and brings the action pursuant to the North Dakota Limited Liability Company Act which is codified at Chapter 10–32 of the North Dakota Century Code.

The Defendants contend that all of the claims are barred by the six-year statute of limitations in North Dakota. The Defendants refer to the claims as arising solely from the development and construction of the two post office buildings in Florida which were completed in September 1997. However, this characterization oversimplifies Roemmich's claims. Roemmich alleges a number of alleged instances of improper treatment and alleged breaches of fiduciary duty by the Defendants which occurred between 1995–2004. These include failure to provide Roemmich with proper notice of meetings; failure to provide a proper accounting or compensation for Roemmich's share of Eagle Eye; the removal of Roemmich as a governor of Eagle Eye on June 24, 1996; alleged self-dealing by Leland Bertsch and Jane Bertsch regarding two loans given to Eagle Eye totaling $147,166.94 on December 31, 1997, and amendments to those notes made on December 31, 1998; alleged self-dealing in entering into a management agreement on January 2, 1997, wherein Bertsch Construction, which is owned by Leland Bertsch, was hired to manage the post office facilities Eagle Eye was constructing in Florida and Minnesota; the payment of a salary to Leland Bertsch beginning sometime in 1996; the use of Eagle Eye funds to finance the development of a post office in Hawaii in 1996; the recent hiring of Bertsch Construction to do repair work on the post offices in Florida, and the assignment of $4,886.00 in taxable income to Roemmich for the year 2004 even though Roemmich had received no distribution from Eagle Eye. Roemmich alleges he was not consulted regarding any of these actions.

Roemmich commenced this lawsuit on April 13, 2004. As such, any cause of action which accrued on or after April 13, 1998, would not be time-barred by the six-year statute of limitations. With respect to actions which occurred prior to April 13, 1998, Roemmich contends that his allegations of wrongdoing are a continuing tort and are not time-barred as the Defendants continue to freeze him out of Eagle Eye operations.

Case law in North Dakota concerning continuing torts is sparse. The most recent case is *Beavers v. Walters*, 537 N.W.2d 647 (N.D.1995), wherein the court held that a continuing tort does not accrue until the tortious acts have stopped. *Id.* at 650 (citing *O'Fallon v. Pollard*, 427 N.W.2d 809, 811 (N.D.1988))(holding the statute of limitations on a claim for false imprisonment does not begin to run until the unlawful detention ceases) and (54 C.J.S. Limitations of Actions § 177 (1987)). The following quote is instructive:

> Where a continuing tort causes a single, indivisible injury, the cause of action accrues at, and limitations begin to run from, the time when the nature and extent of the damage are ascertainable, which may be at the inception of the tort or not until the last date of the tortious conduct. If a continuing tort causes a series of separate and recurrent injuries, limitations run as to each from the date thereof. Subject to rules governing single or successive suits, it may be broadly stated that, where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious overt acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.

A "continuing tort" is one inflicted over a period of time; it involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty. Although a continuation of a special relationship, offering a possibility of correction of an injury, may postpone the running of the statute of limitations, a mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations.

> The principle that the prescription for continuous torts commences from the date of the last injury applies only when the continuous conduct gives rise to continuing damages, and in order to toll the statute of limitations by reason of continuous conduct, plaintiff must allege in his complaint or represent facts which reasonably support an inference of a continuing breach of duty by defendant. Plaintiff is not entitled to new limitations period to begin with the appearance of each new injury or complication, and limitations period begins to run when damage is inflicted which is physically objective and ascertainable.

54 C.J.S. Limitations of Actions § 177 (2005).

■ Two cases were located involving a corporate "freeze out" claim which address the issue of a continuing tort. *Houle v. Low*, 407 Mass. 810, 556 N.E.2d 51, 53 (1990); *Kirley v. Kirley*, 25 Mass.App.Ct. 651, 521 N.E.2d 1041, 1043 (1988). In Houle, the plaintiff claimed a corporate "freeze out" resulted from other shareholders not inviting him to participate in a new and separate corporate venture. The plaintiff contended that his claim was a continuing tort in response to the defendants' raising the statute of limitations as

a defense. The court rejected the argument and reasoned that the claim accrued when the vote not to invite the plaintiff took place and that only the injury was continuing. In Kirley, the "freeze out" at issue was the firing of the plaintiff and denying him his corporate office. After determining that a corporate "freeze out" and breach of fiduciary duty sound in tort rather than contract, the court explained that ongoing injuries does not turn an allegedly wrongful termination and denial of corporate office into a continuing tort.

In the present case, there are multiple instances of wrongdoing alleged by Roemmich against officers and directors of Eagle Eye during a time period from 1995–2004. As the Court views the allegations, they are not interdependent but each constitute a potential breach of fiduciary duty standing alone. The facts as alleged do not support a continuing tort but instead a series of separate torts combined in one lawsuit with separate and successive injuries. See *Young v. Young*, 709 P.2d 1254, 1259 (Wyo.1985)(holding that when there is a recurring tort, such as the repeated theft of oil and gas royalties, involving separate and successive injuries from separate and successive acts, a new action accrues and the statute of limitations begins to run from the date of each tortious act).

Since the alleged incidents of self-dealing and removal were actionable in and of themselves, the present case is not analogous to circumstances where the wrong is only actionable in the aggregate. The ongoing injuries as alleged by Roemmich, attributable in part to a corporate "freeze-out," do not turn this case into a continuing tort. For these reasons, the Court finds that Roemmich has not alleged a continuing tort sufficient to toll the statute of limitations. Roemmich has not alleged in his complaint, nor presented sufficient facts, which reasonably support an infer-

ence of a continuing breach of duty by the defendants. Instead, the allegations in Roemmich's complaint reveal a string of separate and distinct events which are as distinct in time as the injuries they allegedly caused. As a result, those claims which accrued prior to April 13, 1998, are barred by the six-year statute of limitations in North Dakota.

2) DEFENDANTS' CAUSE OF ACTION

The allegations in the Defendants' counterclaim read as follows:

1. Defendants Eagle Eye Development, LLC and Leland Bertsch provided Plaintiff Bruce Roemmich with a thirty percent (30%) ownership interest in and to Eagle Eye Development, LLC as and for compensation for services Roemmich was to provide on behalf of Eagle Eye development, LLC in the development of post office buildings in the State of Florida.

2. Plaintiff Bruce Roemmich performed services on behalf of Eagle Eye Development, LLC in an unprofessional manner and eventually walked off the job before completing the projects, all at a loss to Eagle Eye Development, LLC and Leland Bertsch.

3. Plaintiff Bruce Roemmich's failure to perform his obligations with respect to the construction projects in Florida constitutes a failure of consideration.

4. As a result of Plaintiff's failure to perform his required obligations on behalf of Eagle Eye Development, LLC, Defendant Eagle Eye Development, LLC incurred unnecessary and additional expenses and costs, in a sum to be established at trial.

Construing the counterclaim liberally, a claim for breach of contract and rescission has been asserted against Roemmich for having walked off the job while overseeing

the development and construction of post offices in Florida. It appears to be undisputed that Roemmich left the job in Florida on or about June 7, 1996, and that the Defendants were aware of his actions at that time. It is undisputed that the construction of the post offices in Florida was completed by September 1997. The counterclaim was filed on May 10, 2004. The statute of limitations for a breach of contract or rescission action is six years in North Dakota. N.D.C.C. § 28–01–16. Thus, it is clear and undisputed that the counterclaim was filed beyond the six-year statute of limitations period and is clearly time-barred.

■ The Defendants attempt to rehabilitate their claim by arguing that the six-year statute of limitations is tolled by Roemmich's continuing breach of his fiduciary duties to Eagle Eye. This argument is devoid of merit. The counterclaim does not allege a breach of fiduciary duties to Eagle Eye but rather a breach of contract triggered by a single distinct event, namely Roemmich walking off the job in Florida in June 1996. Even if Roemmich's departure from the job in Florida were construed as a continuing breach, that continuing breach would have ceased when the post office construction projects were completed in September 1997. See Affidavit of Leland Bertsch, ¶¶ 3–4 (Docket No. 51). In either case, any claim against Roemmich would have accrued by at least September 1997, and the counterclaim was not filed until May 2004 which is far beyond the six-year statute of limitations. The Court concludes, as a matter of law, that the Defendants' counterclaim is clearly time-barred pursuant to Section 28–01–16 of the North Dakota Century Code.

### 3) DISSENTER'S RIGHTS CLAIM

The Defendants also contend that Roemmich cannot maintain a dissenter's rights cause of action against Eagle Eye because Eagle Eye's articles of organization have not been amended. The argument is premised upon Section 10–32–54 of the North Dakota Century Code which allows a dissenting member to pursue an action when there has been "an amendment of the articles of organization ... which materially and adversely affects the rights or preferences ... of the dissenting member." N.D.C.C. § 10–32–54. It is undisputed that Eagle Eye's articles of organization have not been amended.

However, this argument would only apply to Count IV of the complaint which Roemmich has labeled "Dissenter's Rights." The primary allegation in Count IV is that Roemmich's right to vote on company actions has been improperly restricted. As a remedy, Roemmich requests that he be paid the fair market value of his percentage interest in Eagle Eye. In response, Roemmich urges the Court to rely upon Section 10–32–119 of the North Dakota Century Code which allows the Court to grant any equitable relief it considers just and reasonable. Such relief may be granted when it is established that:

(1) The governors or the persons having the authority otherwise vested in the board are deadlocked in the management of the affairs of the limited liability company and the members are unable to break the deadlock;

(4) The limited liability company assets are being misapplied or wasted;

N.D.C.C. § 10–32–119(1)(b).

■ The Court concludes that the broad remedies available under Section 10–32–119 would allow for an order requiring the Defendants to pay Roemmich the fair market value of his membership interest if proven and established at trial. The Court may grant a broad range of equitable relief, including the dissolution, wind up, and termination of a limited liability company.

For this reason, the Defendants argument must be rejected at this stage.

### 4) BREACH OF CONTRACT

The Defendants request that the Court find, as a matter of law, that Roemmich breached his contract with Eagle Eye and enter summary judgment in favor of the Defendants on their counterclaim. As set forth above, the Court has previously determined that the counterclaim is clearly time-barred by the six-year statute of limitations in North Dakota.

### 5) PERSONAL LIABILITY

█ Finally, the Defendants contend that the Court should find, as a matter of law, that the individually-named Defendants cannot be held personally liable for their actions as members and/or officers of Eagle Eye. Members, governors, and officers may not be held personally liable merely on account of their status. N.D.C.C. § 10–32–29(1). However, this does not prevent the corporate veil from being pierced. N.D.C.C. § 10–32–29(3). It is clear under North Dakota law that governors in a limited liability corporation may be held personally liable for illegal distributions. N.D.C.C. § 10–32–66. In addition, a governor may be personally liable for failure to comply with the standards of conduct set forth in Section 10–32–86 of the North Dakota Century Code. The Court also has broad power to grant equitable relief for violations of the North Dakota Limited Liability Company Act. N.D.C.C. § 10–32–52.1. At this stage of the litigation, there are clearly genuine issues of material fact in dispute relative to the personal liability of the individual defendants which precludes summary judgment.

### IV. CONCLUSION

For the reasons set forth above, the Court the GRANTS the Plaintiff's Motion for Partial Summary Judgment as to the counterclaim of the Defendants (Docket No. 28); GRANTS the Defendant's Motion for Partial Summary Judgment (Docket No. 25) as to all claims which accrued prior to April 13, 1998; and DENIES the Defendant's Motion for Summary Judgment filed on June 15, 2005. (Docket No. 46).

IT IS SO ORDERED.